## EMMETT WILLARD MULLEN v. DIRECTOR, PATUXENT INSTITUTION

[No. 105, September Term, 1968.]

*Decided February 18, 1969.*

ORTH, J., delivered the opinion of the Court.

The applicant had pleaded guilty to murder in the second degree in the Circuit Court for Prince George's County on 7 August 1963 and was sentenced to imprisonment for a term of 12 years, sentence to begin 11 October 1962. He did not appeal. On 8 August he was committed to the Patuxent Institution on an order for examination as a possible defective delinquent. Relief under post conviction procedures was sought and denied and application for leave to appeal therefrom was denied. *Mullen v. Director,* 234 Md. 655. The evaluation report and recommendation that the staff members at Patuxent felt he was a defective delinquent was filed 27 January 1964. On 15 July 1964 a jury found that he was a defective delinquent and the same day he was ordered confined to Patuxent "without maximum or minimum limits." Application for leave to appeal from this determination was denied "for failure to comply with Md. Rule 894a2(a)." *Mullen v. Director,* 236 Md. 640. On 1 October 1968 he filed a petition for a hearing to redetermine his defective delinquency which was denied on the ground that he was not eligible under Md. Code, Art. 31B, § 10(a) in that he had not served two-thirds of his original sentence. He seeks leave to appeal from that denial.

The applicant does not dispute that he has not served two-thirds of his original sentence as imposed but claims that he is entitled to have considered, as reducing his sentence expiration date, "credits earned for good conduct and work time" in determining whether the two-thirds of his original sentence has

expired. He alleges that by such consideration, two-thirds of his sentence has expired and that he is eligible to have his defective delinquency redetermined. Defense counsel, accepting the applicant's computation that with allowances his sentence will expire on 30 January 1972, states that the applicant had served two-thirds of the sentence on 23 December 1968. Even though, on this computation, the applicant was not eligible for a hearing when he filed his petition, he would now be eligible, if his contention were correct and if he in fact had received the allowances claimed. In support of his contention he relies on *Phyles v. State of Maryland,* No. 14115 Civil, United States District Court for the District of Maryland, filed 31 October 1962 (unreported). We are, of course, not bound by the interpretation given a Maryland statute, which had not been then construed by the Court of Appeals of Maryland, by the United States District Court even though we may be persuaded thereby. But *Phyles* is not applicable in any event because it did not decide the question presented here. The question determined in *Phyles* was: "[A]s to the good time and industrial time allowances referred to in Sections 7, 9 and 10 of Article 31B of the Annotated Code of Maryland, do those allowances apply or serve to reduce the term of a person under sentence of a court and committed to Patuxent for the time he is at Patuxent, *prior to a determination that he is or is not a defective delinquent?*" (emphasis supplied). The court held that the sections did so apply and the Phyles sentence had expired. It then found that since the sentence had expired, there was no statutory authority permitting his continued restraint pending the determination of whether he was a defective delinquent. It further found that because he had not been of any assistance to the State in bringing about a prompt determination of whether he was a defective delinquent (it appeared he was unduly contentious about what lawyer would be appointed for him) there was no basis in the law or in fact for saying "either that the action on his part was of such nature (so as to require him to proceed without counsel) or that any action on his part would justify his continued incarceration beyond the expiration" of his sentence. It held that he had been illegally restrained since his sentence expired. The court issued the writ of habeas corpus prayed with

the thought that Phyles should be released forthwith. We not only distinguish *Phyles* by the significant factual difference that in the instant case the applicant has been determined to be a defective delinquent and committed without maximum or minimum limits but point out that the Court of Appeals of Maryland has now construed the statute in *State v. Musgrove,* 241 Md. 521, filed 3 March 1966. Although it held that an order of court granting *habeas corpus* and releasing a patient from Patuxent was not appealable, it expressed its opinion on questions presented as "of extraordinary public importance and concern," even though not essential to its holding. Musgrove had refused to submit to the examination required to enable the staff at Patuxent to make its evaluation and he alleged that his original sentence, with credit allowable, had expired before he had been determined to be a defective delinquent at the required hearing. The Court found it clear that a person cannot complain of the action, or inaction, of others when he is the cause of the delay that ensues. It said that the failure of Musgrove to cooperate was wholly deliberate. It stated, at 532-533 :

> "Finally, *because* a person sentenced on or after the effective date of Chapter 283 of the Laws of 1963, may be detained in Patuxent under § 6(e) as amended until the procedures for determining whether he is a defective delinquent have been completed regardless of whether or not the criminal sentence has expired and *because* such person is not entitled to credit for good behavior against the criminal sentence unless the conditions specified in § 7(a) as amended have been met, we are of the opinion that the person so confined should not be released on *habeas corpus* until the court is satisfied, not only that the delayed delinquency inquiry permitted by § 6(e) has been completed, but that the credit allowable for good behavior under § 7(a) has been approved by the Board of Correction."

As the applicant's reliance on *Phyles* has been misplaced, and especially so in the light of *Musgrove,* we turn to the statute in determining the validity of his contention. It is clear that when he was committed to Patuxent on 15 July 1964 upon the de-

termination that he was a defective delinquent it was for an indeterminate period without maximum or minimum limits and that his sentence for the original conviction, or any unexpired portion thereof, was and remained suspended. He was "no longer confined for any portion of his original sentence," except as otherwise provided by the statute. Art. 31B, § 9(b). Having been so committed he could not properly file a petition for the purpose of having his defective delinquency redetermined until 1) he had been confined for two years after the commitment *and* 2) he had been confined "for a total period, including any period of confinement under his original sentence prior to commitment * * * equal to two-thirds of his original sentence * * *." § 10(a). He had fulfilled the requirements of 1) and the question is whether he met the requirements of 2). In establishing the time when the petition for redetermination may be filed, no provision is made in the statute for allowances relating to good behavior and work. We think it significant that it is only when a person is found not to be a defective delinquent on the original determination, §§ 7(a) and 9(a) or on redetermination, § 10(a), that credit for time already served shall include "such allowances (or disallowances) relating to good behavior and/or work performed as the Board of Correction may determine under the provisions of § 688 of Article 27 of the Code." [1] And it is only upon a finding that he is no longer a defective delinquent upon redetermination that the allowances (or disallowances) "shall apply to such person's period of commitment to Patuxent Institution with any variation of the regulation issued under said section (§ 688) as the Board of Correction shall consider appropriate in the particular case." § 10(a). We therefore construe the legislative intent as to requirement 2) to have been that the petition for redetermination cannot be filed until the petitioner has been confined for two-thirds of the time of the sentence as originally imposed and

---

1. The Editor's note to § 9 and § 10 states that § 688 was repealed by Ch. 123, Acts 1962. "Present § 700 of Art. 27 contains provisions similar to those of former § 688." Section 700 provides for the diminution of period of confinement in institutions under the jurisdiction of the Department of Correction. They are designated in § 689.

that no allowances relating to good behavior and/or work shall be considered in computing that period. We can reach no other conclusion, in view of the specificity with which the legislature spelled out when credit for such allowances are to be given, than that by failing to provide for allowances to be considered in computing the period for eligibility for filing a petition for redetermination, it intended that they not be considered. Therefore as the applicant had not been confined for a total period equal to two-thirds of his original sentence, he was not entitled to file a petition for redetermination of his defective delinquency and the lower court did not err in denying it.

The applicant also claims that he was denied equal protection of the law in that the requirement of § 10(a) that two-thirds of the original sentence be served before his defective delinquency may be redetermined is an "invidious discrimination." He urges that a convict, not a defective delinquent, is eligible for parole after one-fourth of his sentence has expired and that a defective delinquent should be entitled to have his status redetermined after an equal period so he could have the "same possibility for parole as a nondefective prisoner." We see no merit in the contention. The applicant recognizes that the legislature is allowed wide discretion in the establishment of classes and we agree that legislative classifications, to be constitutionally valid, must be founded upon pertinent and real differences, as distinguished from irrelevant and artificial ones. In *Re Careful Laundry*, 204 Md. 360. But there are pertinent real differences between convicts who have been determined to be defective delinquents and those who have not and we see no constitutional invalidity in distinguishing between them. The Court of Appeals found in *Director v. Daniels*, 243 Md. 16, "* * * that there does in fact exist a class or group of persons falling within the definition (of defective delinquency) * * *," at 33, and that "* * * there in fact does exist a medically recognizable group falling within the definition in the Act's definition * * *," at 34. It held that the Defective Delinquent Act was constitutional and was being constitutionally applied, "both generally and specifically as to Daniels." p. 50. We find no denial to the applicant of equal protection of the law.

*Application denied.*