50

STEVE A. McKINNEY *v.* DIRECTOR,
PATUXENT INSTITUTION

[App. No. 27, September Term, 1973.]

*Decided June 1, 1973.*

Before Orth, C. J., and Morton and Powers, JJ.

Powers, J., delivered the opinion of the Court.

Contrary to views expressed at times by those who may not understand them, laws and rules governing procedures in our system of administration of justice are far from being mere "technicalities." Such laws and rules constitute the flesh which fills out the skeleton made up of our substantive rights and responsibilities. Without procedures for invoking or enforcing those substantive rights and responsibilities, they would be bare indeed. A right without the means of enforcing it is an empty right.

In a society governed by laws and not by men, the laws and rules of procedure must be clearly expressed, and must be carefully followed. The alternative would lead to uncertainty at the least, and perhaps to chaos. Rights which are found only in the books, with no clear means of vindicating them in the courts, have little more than academic significance.

We are fully aware that there are times when the application of a procedural rule may appear to frustrate rather than to promote justice. But it is basic in our system of organized society that the greatest good for the greatest number is best accomplished by the uniform application of both substantive and procedural laws and rules which are sufficiently certain that a member of that society may know his rights, and how to assert or protect them.

Steve A. McKinney was sentenced in the Circuit Court for Montgomery County on 14 October 1968 to serve a term of five years, after a jury convicted him of larceny. He was referred to Patuxent Institution for evaluation, and on 21 October 1969 was found to be a defective delinquent. On 28 June 1971 he filed a petition for redetermination of whether he was a defective delinquent. The court appointed counsel for him, and his petition was heard before a jury on 27 January 1972. The jury returned a verdict that he was a defective delinquent.

On the same day the court entered an order that McKinney was a defective delinquent and that he be returned to Patuxent Institution.

On 23 February 1972 McKinney filed a motion for new trial and a notice of appeal, in which he moved that he be granted leave to appeal from his redetermination of being a defective delinquent. On the same day the court passed an order referring the "matter" to the public defender.

The court scheduled the motion for new trial for a hearing on 17 March 1972. At that time McKinney moved orally for a continuance, and that new counsel be appointed. Both motions were granted. With new counsel representing McKinney, the motion for new trial was heard on 13 October 1972, and was denied. On 30 October 1972 his counsel filed in

the circuit court a paper entitled "Application for Leave to Appeal". The State filed an "Answer", opposing the application for leave to appeal.

On 16 April 1973 the clerk of the circuit court mailed the record in the case to this Court, where it was received on 17 April 1973.

Code, Art. 31B, § 10 (a) provides in part:

> "After any person shall have been committed under § 9 (b) as a defective delinquent, shall have been confined for two years after such commitment, and shall have been confined for a total period, including any period of confinement under his original sentence prior to commitment under § 9 (b), equal to two thirds of his original sentence, such person or anyone in his behalf, including the director or any officer or employee of Patuxent Institution, may file a petition requesting that such person be brought before the court in which such petition is filed for the purpose of having the defective delinquency of such person redetermined."

The original determination here was made on 21 October 1969. The petition for redetermination was filed on 28 June 1971. When the applicant filed his petition for redetermination he was not entitled to file it. It was premature.[1] The petition, and all proceedings based on it, are nullities, and must be vacated. The result is that applicant is still held in the Patuxent Institution under his first

---

1. In *Green v. Director*, 3 Md. App. 1, 237 A. 2d 463, this Court considered and denied an application for leave to appeal from a redetermination of defective delinquency. In a footnote in the Per Curiam opinion of the Court, it was noted that the petition was filed prematurely. The Court recited certain subsequent action in the case, which it felt "was sufficient to constitute a constructive refiling of the petition so as to comply with § 10 (a) for the purposes of this case." Other aspects of the case apparently persuaded the Court to resort to such an expedient in order to reach the merits of the application. Similar facts do not exist here, but in no event would we be inclined to extend what was said in *Green* beyond the precise facts of that case. In *Mullen v. Director*, 6 Md. App. 120, 250 A. 2d 281, we upheld the denial below of a petition for a hearing to redetermine defective delinquency on the ground that is was prematurely filed.

determination of defective delinquency, made on 21 October 1969, and may at any time file a petition for redetermination if he chooses to do so.

Throughout the entire case, from the filing of the petition to the transmittal of the record to this Court, there were repeated failures to apply applicable laws and rules. We think it is desirable to point these out, as constructive criticism, in the hope that their repetition here may help to make the bench and bar, as well as other officials involved, more aware of the required procedures in such a case.

When McKinney's premature petition was received, it was accepted and docketed by the clerk, the court appointed counsel for the petitioner, and the State's Attorney was notified. None appeared to realize what was clearly flagged for all to see by the petitioner who, misapprehending the law, recited the date of his original determination, and requested the court "to docket this Petition for rehearing on Defective Delinquent Status so that he can prepare his case and be ready for his Defective Delinquent trial on October 21, 1971."

The petition was set for hearing in November, 1971, but on a joint petition of the State's Attorney and the Public Defender, it was continued. The hearing was held, with a jury, on 27 January 1972. Twenty-seven days after the verdict of the jury and the order of court that the applicant was a defective delinquent, he filed his motion for new trial and his notice of appeal. There followed three separate failures of the judicial system and its supporting agencies to function as the law requires.

First, even a proper motion for a new trial must be filed within three days after the reception of the verdict. Maryland Rules 759 and 567. The motion here was filed 27 days after the verdict.

Second, a motion for a new trial is not available in defective delinquent proceedings. We said in *Creswell v. Director*, 1 Md. App. 8, 226 A. 2d 158, at pages 9 and 10:

"In *Austin v. Director*, 245 Md. 206, 225 A. 2d 466

(1967) the Court of Appeals said, with reference to new trials in defective delinquent proceedings,

'We think it clear that the lower court, instead of awarding the State a new trial, should have ordered a return of the defendant to the custody of the Department of Correction forthwith. Not only do the cases indicate that the court lacked authority to apply its usual inherent power to grant a new trial in a case such as this, but it is apparent that the court, in the exercise of the special jurisdiction conferred on it by the statute, was required to follow the only course of action prescribed by the statute, when, as here, the defendant was found *not* to be a defective delinquent * * * If new trials are to be granted in defective delinquent proceedings, the Legislature, not the Courts, should provide for them.'

We find no distinction in this regard whether the finding is that the defendant *is not* a defective delinquent or *is* a defective delinquent. It is clear that the lower court was required to follow the only course of action prescribed by the statute (Code, 1966 Supp., Art. 31B, Section 9b) which action it did follow and therefore lacked authority to entertain a motion for a new trial or a motion for a judgment N.O.V."

Third, when McKinney filed his notice of appeal on 23 February 1972, it was the duty of the clerk to transmit the record to this Court. While Maryland Rule 1094 does not prescribe the time within which the clerk should transmit the record to this Court, subsection a. 1. provides that the application for leave to appeal be filed with the clerk of the lower court, and subsection a. 3. prescribes what the record on application for leave to appeal shall contain. It is implicit that the clerk should transmit the record forthwith. Compare Maryland Rules BK46 and 1011.

The motion for new trial, though neither appropriate nor timely, was heard by the court on 13 October 1972, and denied. On 30 October McKinney's counsel filed another application for leave to appeal. Five and one-half months later, the clerk transmitted the record to this Court. The record reveals no reason why it was not transmitted sooner.

Since the entire proceeding is without validity, we do not reach the merits of applicant's contentions. He is free to seek a redetermination at any time.

*Application denied.*