DIRECTOR, PATUXENT INSTITUTION *v.* CASH ET AL.

[No. 287, September Term, 1972.]

\* \* \*

BOOKER *v.* STATE OF MARYLAND EX REL.
BOARD OF PATUXENT INSTITUTION

[No. 318, September Term, 1972.]

*Decided June 14, 1973.*

332

The causes were argued before BARNES, McWILLIAMS, SMITH and DIGGES, JJ., and JAMES C. MORTON, JR., Associate Judge of the Court of Special Appeals, specially assigned.

*Henry R. Lord, Deputy Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Donald R. Stutman, Assistant Attorney General,* and *Andrew L. Sonner, State's Attorney for Montgomery County,* and *Darrel L. Longest, Deputy State's Attorney for Montgomery County,* on the brief, for appellant in No. 287.

*Charles F. Morgan,* with whom was *Murray L. Deutchman* on the brief, for appellees in No. 287.

*Melvin C. Paul, Assistant Public Defender,* with whom were *Alan Hamilton Murrell, Public Defender, Charles Edward Mentzer, Assistant Public Defender,* and *Bernard F. Goldberg, District Public Defender for Howard County,* on the brief, for appellant in No. 318.

*Donald R. Stutman, Assistant Attorney General* and

*Henry R. Lord, Deputy Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee in No. 318.

BARNES, J., delivered the opinion of the Court.

Both appeals, *Director, Patuxent Institution v. Clifton Cash et al.,* No. 287, September Term, 1972, and *Gerald Booker v. State of Maryland ex rel. Board of Patuxent Institution,* No. 318, September Term, 1972, present the same basic question of whether the reporting provision of Maryland Code (1957, 1971 Repl. Vol.) Art. 31B, § 7(a), as amended by Chapter 491 of the Laws of Maryland of 1971, for persons awaiting examination and evaluation at the Patuxent Institution is mandatory or directory. We have decided to consider both cases together in this opinion. There are, however, additional questions raised in *Director,* No. 287, which will also require consideration by us in this opinion. We will first give the facts separately in each case, discuss the basic question common to both cases and then consider the additional questions applicable only to *Director,* No. 287.

### FACTS IN DIRECTOR, PATUXENT INSTITUTION v. CASH et al., No. 287

Fifty patients at the Patuxent Institution (Patuxent), between July 10, 1972, and September 15, 1972, filed petitions for the issuance of a writ of habeas corpus (petitions) in the Circuit Court for Montgomery County before Judge Plummer M. Shearin. These petitions alleged in substance that Patuxent had not evaluated the petitioners, pursuant to Art. 31B, § 7(a), within six months of their transfer to Patuxent for examination and that, as a consequence, they were entitled to be removed from Patuxent. On the date the petitions were filed, none of the petitioners had served the sentences imposed upon them for their original criminal convictions.

Of the original 50 petitioners, 12 only had been convicted in the Circuit Court for Montgomery County and referred by that court to Patuxent for diagnosis and evaluation. The

remaining 38 petitioners had been referred to Patuxent by the courts in Baltimore City, Prince George's, Baltimore, Frederick, Caroline, Allegany and St. Mary's Counties.

The record is complete with data agreed to by stipulation of the parties, showing for each petitioner the date of conviction, the court, judge, sentence and crime, the date of the order of court for referral to Patuxent, the date the petitioner was received at Patuxent, the date the report in regard to the petitioner was forwarded to the referring court and other proceedings in regard to the petitioner. For example, the petitioner and first-mentioned appellee, Clifton Cash, was convicted on December 23, 1970, in the Circuit Court for Prince George's County for rape and was sentenced to a term of 20 years' imprisonment from March 19, 1970. The order of referral to Patuxent was dated December 23, 1970. Mr. Cash was received at Patuxent on March 23, 1971, and reports in regard to him were filed in the Circuit Court for Prince George's County on May 22 and August 16, 1972.

It would unnecessarily prolong this opinion to set out the data in regard to the remaining 49 petitioners and appellees. We will state, however, that the crimes involved in regard to some (but not all) of the defendants are rape, kidnapping, arson, robbery, forgery and uttering, burglary, robbery with a deadly weapon, sodomy, perverted practice, assault with intent to murder, assault, housebreaking, manslaughter, malicious burning, larceny and petty larceny, storehousebreaking and various attempts to commit some of the crimes listed. The original sentences involved ranged from two years imposed upon the petitioner Charles Johnson in the Circuit Court for Allegany County for assault to 40 years imposed upon the petitioner Albert Stokes in the Circuit Court for Prince George's County for kidnapping and robbery with deadly weapon (4 counts). The majority of the sentences are between 5 to 10 years. Six of the petitions (not including the petitions of any of the petitioners specifically mentioned) were discharged by the lower court during the course of the hearing for various reasons not now important.

The parties entered into a stipulation in the lower court,

that if the petitioners were called to testify under oath or after affirmation at the hearing on the present petition, they would continue to refuse to engage in a personal interview with any psychologist, psychiatrist, or other Patuxent Institution staff member. In addition, the stipulation stated, in effect: that each of the 44 petitioners was ordered to Patuxent for an examination for possible defective delinquency, pursuant to Art. 31B, § 6(d) of the Maryland Code; that upon arriving at Patuxent, each petitioner was assigned to a cell in the receiving section there; that during that period of time, the psychotherapy, rehabilitative opportunities and vocational training available to persons diagnosed as defective delinquents were not available to the petitioners; that the cost of confinement of a person at Patuxent is not less than $7,994.00 per annum (per capita cost for fiscal 1971) and for confinement in the Division of Correction not more than $5,524.00 per annum (cost for fiscal 1972). The calculations are based on operating costs and do not include capital expenditures.

Paragraphs III and IV of the stipulation are, as follows:

"III. The staff at Patuxent Institution has available to it information [1] concerning the Petitioner in his base file and in his other records. Certain of this information could be used by the staff in making an evaluation of Petitioner as to whether he is a defective delinquent. With certain exceptions, diagnoses have been attempted on all Petitioners based solely on the information contained in his base file and are attached hereto as Exhibit A and the diagnosis or reasons for failure to make a diagnosis are stated therein.

"IV. There was no adversary hearing prior to the referral of Petitioner to Patuxent Institution for the purpose of determining whether or not he

---

"1. [Footnote in original] This information may consist of but is not limited to FBI reports, pre-sentence investigations, prior psychological and psychiatric histories, information from prior incarcerations, employment and school information, military service records and social service summaries."

should have been referred for evaluation. The defective delinquent law, Article 31B, does not provide for such a hearing. There was no adversary hearing held within the first six months of Petitioner's confinement at Patuxent Institution to determine if he should continue to be confined for purposes of evaluation."

Judge Shearin based his comprehensive opinion on an interpretation of Art. 31B, § 7(a), as amended by Chapter 491 of the Laws of 1971, which provides: "They shall state their findings in a written report addressed to the court, not later than six months from the date said person was received in the Institution for examination, or three months, before expiration of his sentence, whichever first occurs." He concluded that this language was mandatory and hence the petitioners were entitled to be released from Patuxent and transferred to the Division of Corrections for the service of their original sentences. Judge Shearin also indicated that the Supreme Court of the United States in *McNeil v. Director,* 407 U. S. 245, 92 S. Ct. 2083, 32 L. Ed. 2d 719 (1972) had held unconstitutional a portion of Art. 31B, § 6(e):

"After the court has ordered an examination to be made under this Section, said person shall be retained in custody, initially of the Department of Corrections until his transfer to Patuxent Institution *and thereafter in the custody of Patuxent Institution until such time as the procedures of the subtitle for the determination of whether or not said person is a defective delinquent have been completed, without regard to whether or not the criminal sentence to which he was last sentenced has expired.*"

He stated that our "dicta" in *State v. Musgrove,* 241 Md. 521, 217 A. 2d 247 (1966) to the effect that all of Art. 31B, § 6(e) was constitutional and valid had been "vitiated by the decision of the Supreme Court in *McNeil*" and that the lower court "must rely on other sources for assistance in determining the effect of the 1971 Amendments to Article 31B."

From Judge Shearin's order of October 4, 1972, directing the Director of Patuxent to transfer the named petitioners from Patuxent to the jurisdiction of the Division of Corrections, the Director took a timely appeal to the Court of Special Appeals on October 17, 1972. The Director, on December 6, 1972 — prior to briefing and argument in the Court of Special Appeals — filed a petition for the issuance of a writ of certiorari with us, pursuant to Art. 5, § 21B, Chapter 361, Laws of Maryland 1972, to bring the case directly to us for decision. We granted the petition for the issuance of the writ of certiorari on December 12, 1972.

*FACTS IN BOOKER v. STATE OF MARYLAND ex rel. BOARD OF PATUXENT INSTITUTION, No. 318*

On November 9, 1972, the appellee and plaintiff below, the State of Maryland ex rel. Board of Patuxent Institution, filed a bill of complaint in the Circuit Court for Howard County, in equity, against Gerald Booker, the appellant and defendant below, seeking declaratory relief pursuant to Article 31A of the Code — the Uniform Declaratory Judgments Act. The facts in the case and the relevant allegations in the bill of complaint are well stated by Chief Judge Macgill in his written opinion filed on January 5, 1973, as follows:

> "Article 31B, Section 7(a), before the passage of Chapter 491, read, in part, as follows:

>> " 'They shall state their findings in a written report addressed to the Court, *no later than six months from the date said person was received in the Institution for examination, or before expiration of his sentence, whichever last occurs.'*
>> (Emphasis in original)

> "Chapter 491 amended a portion in the section to read as follows:

>> " 'They shall state their findings in a written report addressed to the court, *not later than six months from the date said person was received*

> *in the institution for examination, or three*
> *months before expiration of his sentence,*
> *whichever first occurs.'*
> (Emphasis in original)

"The bill alleged that the defendant, who had been referred to the Institution for an examination and evaluation after a conviction of robbery in the Criminal Court of Baltimore City, had consistently refused to submit to psychological and psychiatric examinations and that because of his refusal no report has been made by the Institution to the referring court within six months after the defendant had been received at the Institution.

"The relief prayed is that this Court declare that Article 31B, Section 7(a), as originally drawn, or as amended by Chapter 491, does not require that the Patuxent Institution submit its report within the time limits therein set forth when those such as the defendant refuse to submit to an examination, that this Court declare that the failure to submit such a report to the referring court within the time limited does not require the transfer of such persons to the Division of Corrections, that this Court declare that such a report, if submitted after the time limited, is not invalid, and that this Court declare that the language of Section 7(a) is not mandatory but discretionary as to those persons who refuse to cooperate to the extent of submitting to a personal examination as provided for in the Section.

"It was stipulated that the records of Patuxent would reveal that no psychiatric or psychological examinations had been made of the defendant during his period of confinement in excess of six months in that institution and that the records would further reveal that he has consistently refused to submit to such examinations. It was also stipulated that if the director, Dr. Boslow, were to testify, he would probably give his opinion that

the required report could not be made on the defendant without such personal examination and testing. It was not conceded by the defendant that Dr. Boslow's opinion would be correct. It was asserted on behalf of the defendant that, based on the opinion in *McNeil v. Director, Patuxent Institution*, 40 LW 4743, 92 Sp. Ct. 2083, 32 L. Ed. 2d 719 (1972), the required finding and report could be made without a personal examination.

"Judge Plummer M. Shearin, of the Circuit Court for Montgomery County, on October 4, 1972, ordered that certain of the inmates of Patuxent be transferred to the jurisdiction of the Division of Corrections on the ground that the time requirement in Section 7(a) is mandatory, irrespective of the recalcitrance of an inmate, and that the Legislature, by the enactment of the amendment, so manifested its intention. Judge James S. Getty, of the Circuit Court for Allegany County, on November 15, 1972, arrived at a conclusion contrary to that reached by Judge Shearin, and stated, in part, 'The legislature, furthermore, did not amend that part of Article 31B Section 6(e) which provided that persons could be retained at Patuxent until the procedures for determining defective delinquency had been completed. If the intent was to make Section 7 mandatory, 6(e) would have been stricken from the law. Both the Legislature in adopting the law and the Court in interpreting it appear to this Court to have intended that Section 7 was directory and not mandatory.' "

Chief Judge Macgill concluded that the language in Art. 31B, § 7(a), as amended, was directory rather than mandatory and on January 10, 1973, in accordance with his opinion of January 5, filed a final decree which made the following declarations:

1. ". . . the provisions of Article 31B, Section 7(a),

Annotated Code of Maryland, prior to Chapter 491, Laws of Maryland, 1971, and as amended by that Chapter, are not mandatory, but directory with respect to those individuals referred to Patuxent Institution for examination who refuse to submit to the personal examination, diagnosis and evaluation pursuant to Article 31B, Section 7(a); that the provisions of Article 31B, Section 7(a), prior to Chapter 491, Laws of Maryland, 1971, and as amended by that Chapter, are only applicable where an individual referred to Patuxent Institution for diagnosis and evaluation permits, by virtue of his timely cooperation with the staff at Patuxent Institution, to make its diagnosis and evaluation in accordance with the provisions of Article 31B, Section 7(a); . . ."

2. ". . . the provisions of Article 31B, Section 7(a), prior to Chapter 491, Laws of Maryland, 1971, and as amended by that Chapter, do not require Patuxent Institution to submit its formal diagnostic report to the referring court within the time set forth in Article 31B, Section 7(a), with respect to individuals referred to Patuxent Institution for diagnosis and evaluation who refuse to submit to the personal evaluation process required by Article 31B, Section 7(a); . . ."

3. ". . . the failure of Patuxent Institution to submit its formal diagnostic report within the time set forth in Article 31B, Section 7(a), does not require the transfer of those persons from Patuxent Institution to the Division of Corrections of the Department of Public Safety and Correctional services; . . ."

4. ". . . a formal diagnostic evaluation pursuant to Article 31B, Section 7(a), made and sent to the referring court subsequent to the six month period set forth in Article 31B, Section 7(a), with respect to an individual who has refused to submit to the personal evaluation process required by Article 31B,

Section 7(a), is not invalid if made more than six months after such individual's transfer to Patuxent Institution . . . ."

The appellant Booker filed a timely appeal to this Court from the decree of January 10.

We have concluded that the language in Art. 31B, § 7(a), as amended by Chapter 491 of the Laws of 1971, is directory and not mandatory.

The relevant provisions of § 7(a) of Art. 31B, both before and after the amendment by Chapter 491 of the Laws of 1971, effective July 1, 1971, are set out in the above opinion. It is important to note that the critical words, "They *shall* state their findings in a written report addressed to the Court, *no later than six months from the date said person was received in the Institution for examination,*" were not changed by the amendatory legislation. The last clause was changed to *shorten* the reporting time for a person referred to Patuxent near the end of his original criminal sentence. The title to Chapter 491 indicated the legislative intent to disallow an examination if the person was within three months of the expiration of his sentence and to change the time within which the report could be made to the court for persons who cooperated in the diagnostic procedure. It should also be observed that the General Assembly *did not amend* that part of § 6(c) which states that persons may be retained at Patuxent ". . . until such time as the procedures of this subtitle for the determination of whether or not said person is a defective delinquent have been completed. . . ."

In *State v. Musgrove*, 241 Md. 521, 217 A. 2d 247 (1966), we indicated that the language of § 7(a) — "They shall state their findings," etc. — was directory and not mandatory. Judge Horney, for the Court, stated:

"Although § 7(a) of Article 31B provides that the examining physician, psychiatrist and psychologist shall state their findings in a written report to the court within six months or before the expiration of the sentence whichever last occurs, we are of the opinion that the order of court referring a person to

Patuxent for an examination until such time as the procedures for determining whether or not such person is a defective delinquent have been completed could not be defeated by the refusal of such person to submit to the examination required by § 7(a) if the Patuxent staff cannot make its determination without it. It is clear that a person cannot complain of the action, or inaction, of others when he is the cause of the delay that ensues. *State v. Murdock,* 235 Md. 116, 200 A. 2d 666 (1964); *Harris v. State,* 194 Md. 288, 71 A. 2d 36 (1950). Moreover, failure to comply with filing requirements is not always fatal. In *Hamilton v. State,* 225 Md. 302, 170 A. 2d 192 (1961), it was said that the provisions of Article 59 requiring a determination in advance of trial on the merits as to whether the defendant had sufficient mental capacity to participate in his defense were procedural and not jurisdictional. It has even been held that constitutional requirements as to filing decisions within a specified time are directory and procedural rather than mandatory or jurisdictional. *Snyder v. Cearfoss,* 186 Md. 360, 46 A. 2d 607 (1946); *Myers v. State,* 218 Md. 49, 145 A. 2d 228 (1958), *cert. den.* 359 U. S. 945, 79 S. Ct. 731, 3 L.Ed.2d 678 (1959)." 241 Md. at 532, 217 A. 2d at 252.

Our *holding* in *Musgrove* was that the State had no right of appeal to this Court in that case from the action of the trial judge in granting the writ of habeas corpus, none of the statutory grounds for appeal by the State to this Court being present; but we also construed § 7(a), stating:

"If this appeal was an ordinary one, then what has been said above would be an end of the matter. But because the appeal presents substantial questions of *extraordinary public importance and concern,* we are constrained to express our opinion with regard to them. *See Kardy v. Shook, J.,* 237 Md. 524, 207 A. 2d 83 (1965), and cases cited

therein." (Emphasis supplied)
241 Md. at 529-30, 217 A. 2d at 251.

We obviously intended that our construction of the language of § 7(a) (as directory and not mandatory) should be followed by the lower courts of this State; and this has been done, except by Judge Shearin in the present case. *See, e.g.,* cases decided by the Court of Special Appeals: *Mullen v. Director,* 6 Md. App. 120, 124, 250 A. 2d 281, 283 (1969); *Knox v. Director,* 1 Md. App. 678, 680, 232 A. 2d 824, 825 (1967); and *Wise v. Director,* 1 Md. App. 418, 422, 230 A. 2d 692, 694 (1967), and cases decided by the *nisi prius* courts: *State v. Johnson,* No. 1774 Criminal Trials, Circuit Court for Allegany County, Memorandum Opinion and Order by Judge James S. Getty, dated November 15, 1972; *Vucci v. Patuxent,* Misc. Petition No. 4540, Circuit Court for Montgomery County, Memorandum Opinion and Order by Judge John P. Moore, dated March 27, 1972; *Strickland v. Director,* No. 12537, Baltimore City Court, Memorandum Opinion by Judge James W. Murphy, dated February 1, 1972; and *Burke v. State,* Miscellaneous Petition No. 3438, Circuit Court for Montgomery County, Memorandum Opinion and Order by Judge Irving A. Levine (now Associate Judge of this Court), dated January 23, 1968. *See also Tennant v. State,* Civil No. 18144, United States District Court for the District of Maryland, Memorandum and Order of Judge (now Chief Judge) Edward S. Northrop, dated April 16, 1969, citing *Musgrove* with approval and holding that the reporting language in § 7(a) was directory and not mandatory.

Judge Shearin, however — notwithstanding this rather impressive array of judicial opinion to the contrary — concluded that the reporting language of § 7(a) was mandatory and not directory and further that a portion of § 6(e) of Art. 31B was unconstitutional, relying upon the opinion of the Supreme Court of the United States in *McNeil v. Director,* 407 U. S. 245, 92 S. Ct. 2083, 32 L. Ed. 2d 719 (1972).[1] Judge Shearin based his opinion principally upon the

---

1. Article 31B, § 6(e) provides:

"After the court has ordered an examination to be made under this

ground that the word "shall" used in the reporting language is generally considered to be mandatory and should be so construed. He also indicated that:

> "In the absence of any appellate decision directly in point, and in view of the fact that the *Musgrove* dicta (which at the most were applicable only to the factual situation presented in that case) have been vitiated by the decision of the Supreme Court in *McNeil*, the Court must rely on other sources for assistance in determining the effect of the 1971 Amendments to Article 31B."

We adhere to our prior indication in *Musgrove* that the language in question is directory and not mandatory.

We stated in *Maryland Medical Service v. Carver*, 238 Md. 466, 479, 209 A. 2d 582, 589 (1965):

> "Ordinarily the word 'shall' is mandatory and it is presumed that the legislature used this word in its usual and natural meaning unless there is something in the legislation to indicate otherwise."

We also stated, however, in *Hitchins v. City of Cumberland*, 215 Md. 315, 323, 138 A. 2d 359, 362-63 (1958) that:

> ". . . it is well settled that the use of the words 'shall' or 'may' [is] not controlling, in determining whether a particular provision is mandatory or directory. . . . The question of construction turns upon the intention of the Legislature as gathered from the nature of the subject matter and the purposes to be accomplished."

---

section, said person shall be retained in custody, initially of the Department of Correction until his transfer to Patuxent Institution *and thereafter in the custody of Patuxent Institution, until such time as the procedures of this subtitle for the determination of whether or not said person is a defective delinquent have been completed, without regard to whether or not the criminal sentence to which he was last sentenced, has expired.*" (Emphasis supplied)

The italicized portion of § 6(e) is the part of that section thought to be unconstitutional.

*See also Barnes v. State ex rel. Pinkney,* 236 Md. 564, 574, 204 A. 2d 787, 792 (1964). Also, Section 7(a) provides no penalty for any failure to act within the time prescribed, further indicating that the language is intended to be directory rather than mandatory. *See Snyder v. Cearfoss,* 186 Md. 360, 370, 46 A. 2d 607, 611 (1946). Cf. Sutherland, *Statutory Construction* § 5818 (3d ed. 1943).

Then, too, it is presumed that the General Assembly was aware of the judicial construction by us of the language in question when it adopted that language in Chapter 491 of the Laws of 1971 and that it intended that the re-enacting legislation have the same meaning we have given it. *Stack v. Marney,* 252 Md. 43, 49, 248 A. 2d 880, 884 (1969) and cases cited in that opinion. If the General Assembly had not intended the words to have the interpretation we had given them in *Musgrove,* it doubtless would have indicated that the provision be mandatory.

As the testimony of Dr. Boslow, Director of Patuxent, indicated in the *Cash* case, the original administrative interpretation and continued practice under § 7(a) was in accordance with our interpretation of § 7(a). If the language is thought to be ambiguous, this factor is entitled to great weight by us in construing the language in question. *Department of Motor Vehicles v. Greyhound,* 247 Md. 662, 669, 234 A. 2d 255, 258 (1967) and prior Maryland cases cited in that opinion.

The *McNeil* case, *supra,* is clearly distinguishable from the cases now before us in that in *McNeil* the sentence of McNeil had expired, whereas in the present case, none of the sentences of the petitioners had expired. Even in regard to persons held at Patuxent whose original criminal sentences had expired, *McNeil* indicates to us that the decision is to be narrowly applied. In the opinion for the Supreme Court, Mr. Justice Marshall indicated the Court's concern for what it considered to be, so far as McNeil was concerned, a permanent commitment upon an *ex parte* order committing him for observation and evaluation as a defective delinquent. McNeil had already been confined for six years and was still adamant in his refusal to cooperate with the

examining officials at Patuxent. *Under these circumstances,* the Supreme Court found applicable their recent decision in *Jackson v. Indiana,* 406 U. S. 715, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972), which held that where a commitment to determine whether one charged with a crime was mentally incompetent to stand trial was permanent in its practical effect, due process "required safeguards commensurate with a long-term commitment." It was stated in *McNeil:*

> "*In this case* it is sufficient to note that the petitioner has been confined for six years, and there is no basis for anticipating that he will ever be easier to examine than he is today. In these circumstances, it is a denial of due process to continue to hold him on the basis of an *ex parte* order committing him for observation."
> (Emphasis supplied)
> 407 U. S. at 250, 92 S. Ct. at 2087, 32 L. Ed. 2d at 723.

The Supreme Court declined to pass upon McNeil's contention that he had a right under the Fifth Amendment to withhold cooperation, but indicated that if his commitment could otherwise rest upon the theory of a civil contempt, due process required a hearing to determine whether he had, in fact, behaved in a manner that would amount to such contempt.

In considering the State's suggestion in *McNeil* that the petitioner in that case was probably a defective delinquent because most noncooperators are and that the underlying purposes of the Defective Delinquency Law are being carried out, Mr. Justice Marshall stated:

> "But that argument proves too much. For if the Patuxent staff was prepared to conclude, on the basis of petitioner's silence and their observations of him over the years, that petitioner is a defective delinquent, then it is not true that he has prevented them from evaluating him. On that theory, they have long been ready to make their report to the Court, and the hearing on defective delinquency could have gone forward."

407 U. S. at 251-52, 92 S. Ct. at 2088, 32 L. Ed. 2d at 724.

A consideration of the testimony of the Director of Patuxent, Dr. Harold M. Boslow, in the *Cash* case is helpful. Dr. Boslow testified that after our decision in *Musgrove*, the staff at Patuxent believed that the courts would take an active part to assist it in persuading the noncooperating patients to take part in the evaluation procedure. Considering a psychological and psychiatric evaluation the best possible means of making a report to the courts, the staff continued to encourage such patients to cooperate.

After Chapter 491 amending § 7(a) became effective, the Patuxent staff made no change in its policy in regard to evaluations because it believed that our decision in *Musgrove* effectively covered this situation. This belief was further supported by an opinion from the Office of the Attorney General concerning the effects, if any, resulting from the amendment, stating, *inter alia*, that the amendment did not change the law established by *Musgrove*.

After the decision by the Supreme Court in *McNeil* on June 19, 1972, the staff was faced with the problem that an undiagnosed person would be released when his sentence expired. After consultation with the Patuxent Board and with counsel, the staff attempted, where possible, to diagnose individuals referred for examination who had declined to cooperate in the examination process on the bases of historical data in the file of each individual. Dr. Boslow further testified, in effect, that he and the staff prefer not to make a diagnosis without a personal interview, but that such a diagnosis would be "valid" in the absence of a showing of an intentional and deliberate designation on the part of the officials of Patuxent to postpone the diagnosis for an unreasonable time (and there is no such evidence in the present cases). The procedure presently followed by the Patuxent officials is proper in accordance with our opinion in *Musgrove*.

During the period of time from the filing of the petitions in the *Cash* case in the lower court and the time of hearing,

Patuxent attempted to make a diagnosis pursuant to § 7(a) on all of the petitioners and filed reports with the referring courts, diagnosing 34 petitioners as defective delinquents, stating in 10 reports that diagnoses could not be made because of the patients' refusal to cooperate in the evaluation process and the lack of any historical data in their respective files. Of the 50 petitions filed in the lower court, six petitioners were discharged for miscellaneous reasons by the lower court.[2]

In sum, in the *Cash* case, all of the petitioners have either been discharged from Patuxent or have had reports returned

2. The diagnostic staff report of Clifton Louis Cash appears in the record as an example of a report formulated for a noncooperative petitioner where there was sufficient historical data available upon which to base a diagnosis of defective delinquency. Cash was first convicted of attempted rape in September, 1954. Since that time, he has accumulated a criminal record which includes convictions for assault with intent to rape, attempted robbery and indecent exposure. Cash was referred to Patuxent after being convicted and sentenced to 20 years for the rape of Sister Karen Lester in the ladies' restroom at the Pallotti High School in Laurel, Maryland. The staff report indicates that she strenuously resisted the assault, tearing off the red ski mask of her assailant in the process. The assailant, 5 feet 10 inches tall and weighing approximately 200 pounds, then choked her into unconsciousness. The victim suffered multiple finger marks on her neck, a contusion of the right cheek and scratches of the upper chest. The pelvic examination revealed multiple abrasions and small lacerations of the vulva and hymenal ring. The report recounts that the education of petitioner Cash was interrupted at age 15 when he received his first sentence for attempted rape. While in the Reformatory in 1957 for assault with intent to rape, Cash was interviewed by Dr. Boslow who concluded at that time:

" 'He seems to be a markedly asocial and amoral individual who has no concept of the seriousness of his offenses, and has very defective social judgment. His ability to think abstractly and conceptually is poor, if it is present at all, and the prognosis for any change is extremely poor. He boasts of sexual prowess, stating that he has had relations with approximately twenty females. He can give no reason for the offense. He states "I just wanted to scare her. I'd just broke up with my girlfriend and I didn't have any sex, so I just picked on this girl". He seems to possess no shame or guilt in regard to his offense and it is, I feel, easily predictable that this young man will become a serious sexual offender in the future' "

He was treated at St. Elizabeth's in Washington, D. C. in 1968 and was admitted to Clifton T. Perkins State Hospital on May 18, 1970, and discharged on July 28, 1970, where the final diagnosis was "borderline mental retardation with antisocial features."

Petitioner Cash attempted to escape from Patuxent on March 24, 1972, was apprehended and returned by the State Police the following day. He repeatedly refused to be seen by a psychiatrist. The staff concluded that it should be recommended that the Petitioner Cash be considered for commitment to Patuxent as a defective delinquent, as defined by Art. 31B.

to the referring court for further court action as *McNeil* suggested should be done. We do not consider any of the petitions filed in *Cash* to be within the holding of the Supreme Court in *McNeil* and, further, we do not perceive any holding in *McNeil* that our opinion in *Musgrove* is impaired. Indeed, in *McNeil,* the Supreme Court in Note 2 of its opinion cites *Musgrove* and *Mullen v. Director,* 6 Md. App. 120, 250 A. 2d 281 (1969), applying *Musgrove* for the proposition that the Maryland Courts have construed § 7(a) "to permit extension of the allowable time . . . in the case of a noncooperative defendant who resists examination." There was no suggestion that this was unconstitutional or otherwise improper.

Then, too, we deem it to be significant that the Supreme Court ultimately denied certiorari as improvidently granted in *Tippett v. Maryland,* 436 F. 2d 1153 (4th Cir. 1971), *sub nom., Murel v. Baltimore City Court,* 407 U. S. 355, 92 S. Ct. 2091, 32 L. Ed. 2d 791 (1972), Mr. Justice Marshall stating in *McNeil:*

> "In *Murel v. Baltimore Court, post,* several prisoners who had been committed as defective delinquents sought to challenge various aspects of the criteria and procedures that resulted in their commitment; we granted certiorari in that case together with this one, in order to consider together these challenges to the Maryland statutory scheme. For various reasons we now decline to reach those questions, see *Murel, post.* "
> 407 U. S. at 247-48, 92 S. Ct. at 2086, 32 L. Ed. 2d at 722.

Chief Judge Haynsworth of the United States Circuit Court of Appeals for the Fourth Circuit stated in *Tippett:*

> ". . . [T]he Act represents an enlightened and progressive experiment aimed at rehabilitating persons whose anti-social activities are occasioned, at least in part, by mental disorders. * * * Time is required to appraise its ultimate effectiveness, but there is firm foundation for hope that it will prove

> a material and positive step toward the rehabilitation of mental and emotional defectives, and the protection of society from those anti-social defectives who are beyond rehabilitation."
> 436 F. 2d at 1157-58.

To the same effect, see the comments of the United States Court of Appeals for the Fourth Circuit in *Sas v. Maryland,* 334 F. 2d 506, at 516 (1964) and our comments in *Director v. Daniels,* 243 Md. 16, at 31-32, 221 A. 2d 397, at 406 (1966). Although not without some dissent, the weight of professional opinion appears to indicate that the beneficent purposes of the Maryland Defective Delinquent Law are being realized. *See* Hodges, *Crime Prevention by the Indeterminate Sentence Law,* 128 American Journal of Psychiatry 3 (September 1971) and *Maryland's Defective Delinquent Statute, A Progress Report,* promulgated by Patuxent on January 9, 1973. It thus appears that the substantial expense to the State in operating Patuxent ($7,994 per annum per capita v. $5,524 per annum per capita for the Division of Correction) has been productive. It is clear to us that the Supreme Court in *McNeil* had no intention to gravely impair or possibly destroy the forward looking effort to rehabilitate criminals with difficult problems, particularly in view of the substantial success this effort has already obtained.

We now turn to a consideration of two additional questions raised by the appellees in the *Cash* case, *i.e.,* (1) that the lower court had jurisdiction to issue the writs of habeas corpus and grant the requested relief and (2) the present appeal in *Cash* is not authorized by law and must be dismissed.

(1)

The State contends that the common law concept of the relief obtainable under the writ of habeas corpus was only to *release* a petitioner from unlawful restraint, as codified in the Maryland law by the provisions of Code (1957, 1971 Repl. Vol.) Art. 42, § 14 and as reaffirmed by us in *State v. McCray,* 267 Md. 111, 131, 297 A. 2d 265, 275 (1972) and prior

cases cited therein. Hence, argues the State, the lower court had no power to order the transfer of the petitioners from detention at Patuxent to *detention* in the Department of Correction under their original sentences.[3] In view of our reversal of the lower court upon its error in holding the reporting language of § 7(a) to be mandatory rather than directory, we do not find it necessary to decide whether the relief granted by the lower court is within the purview of proper relief under a petition for habeas corpus.

(2)

The appellees earnestly contend that the State has no right of appeal from the order of the lower court in the *Cash* case in that, they argue, the lower court did not decide that a Maryland statute was unconstitutional as required by Art. 42, § 19. *See Hudson v. Superintendent,* 11 Md. App. 253, 273 A. 2d 470 (1971).[4] However, as we have already indicated, the lower court did determine that a portion of Chapter 491 of the Laws of 1971, Art. 31B, § 6(e) was unconstitutional, relying upon the lower court's interpretation to that effect of the Supreme Court's decision in *McNeil.* This, in our opinion, was sufficient to give the State the right — if not the duty — to appeal so that this determination of unconstitutionality could be considered on appeal. This distinguishes the *Cash* case from *Musgrove* in which we held that the trial court in that case had not released Musgrove upon any ground involving a decision that a Maryland statute was unconstitutional and hence the State's appeal had to be dismissed. Our decision here was, however, foreshadowed by our opinion in *Musgrove* where it was stated:

---

**3.** This, of course, contrasts the Maryland law with the present holdings under the Federal Habeas Corpus Act granting the federal courts the power to dispose of habeas corpus cases "as law and justice require," 28 U.S.C. § 2243 (1971), and the holding of the Supreme Court of the United States in Peyton v. Rowe, 391 U. S. 54, 88 S. Ct. 1549, 20 L. Ed. 2d 426 (1968).

**4.** If the petitioners in Cash, No. 287, prevailed on this point, it would effectively dispose of their cases, but it would not prevent our determination of the principal question of whether the reporting language in § 7(a) is directory or mandatory in Booker, No. 318.

352

"We may assume that had the judge released the patient on the ground or for the reason that compelling him to submit to an examination would be tantamount to requiring him to testify against himself, the case might be reviewable by this Court. That, however, as we read the record, was not the reason the judge released the patient from Patuxent." 241 Md. at 529, 217 A. 2d at 250.

*Order of October 4, 1972, in No. 287 reversed, and decree of January 10, 1973, in No. 318 affirmed.*

*The costs to be paid by the appellant in No. 287 and by the appellee in No. 318.*