HOWARD MARTIN, JR. *v.* DIRECTOR,
PATUXENT INSTITUTION

[No. 169, September Term, 1973.]

*Decided August 3, 1973.*

The cause was argued before ORTH, C. J., and THOMPSON and MENCHINE, JJ.

*Robert Anthony Jacques* for appellant.

*Donald R. Stutman, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Andrew L. Sonner, State's Attorney for Montgomery County,* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

On 25 May 1971 in the Circuit Court for Montgomery County HOWARD MARTIN, JR. pleaded guilty to petit larceny (the 2nd count of the indictment in Criminal 12041), and on 2 September 1971 sentence was imposed. The docket entries read:

> "Sentence of the Court (Moore, J.) to be confined in the Department of Correction for Eighteen (18) months as to Howard Martin, Jr. Defendant to be allowed two (2) months credit for time already served in jail."

On the same day, upon petition by the State, the court ordered that Martin be delivered to Patuxent Institution for evaluation as a possible defective delinquent. The diagnostic staff report of Patuxent, dated 1 February 1972, filed in the case on 3 April 1972, concluded that Martin met the definition of a defective delinquent and recommended that he be committed to Patuxent in accordance with Code, Art. 31B. On 5 April the State requested a hearing. On 21 April Martin was brought into court and counsel was appointed to represent him. On 19 May he filed a petition for habeas corpus and injunctive relief, claiming the procedures at Patuxent violated his constitutional rights. A hearing on the petition was held on 25 May. Relief prayed was denied but a request by Martin for a continuance with respect to the hearing for determination of his defective delinquency so he could obtain a private psychiatric examination was granted. The determination hearing was set for 24 October. On 26

September, upon petition by the State, the court ordered that the case be continued from the trial docket of Tuesday, 24 October, and rescheduled on a date "which is not a Tuesday," because the members of the Patuxent staff, needed to testify on behalf of the State, were not available. Tuesday being "the day on which all members of the staff gather for the purpose of diagnostic evaluations of inmates at Patuxent Institution." Hearing was set for 11 January 1973. On 9 January Martin filed two motions "for order of transfer of petitioner from Patuxent Institution to another facility of the State Department of Corrections." One alleged he was committed to Patuxent without a due process hearing. The other claimed that the evaluation report of him was filed more than six months after his transmittal to Patuxent and that he had fully served the sentence imposed on him. He also filed a motion in limine to exclude the evaluation of him. Upon denial of the motions after hearing on 11 January and upon denial of an oral motion to dismiss the proceedings, the hearing on the issue of defective delinquency proceeded before a jury. On 12 January the jury found that he was a defective delinquent. The same day the court ordered that he be committed to Patuxent "as a defective delinquent for an indeterminate period and until released by due process of the law."

On 6 February 1973 Martin noted an appeal. By order of this Court of 16 April 1973 the appeal was treated as an application for leave to appeal. Art. 31B, § 11; Maryland Rule 1094. On 11 May an amended application was filed. It contained five reasons why the order of the court should be reversed, Maryland Rule 1094 a 2 (a):

(1) the denial of an unlimited right to appeal is a denial of equal protection of the laws and procedural due process;

(2) the burden of proof to establish defective delinquency should be beyond a reasonable doubt;

(3) due process of law was violated because "the procedure followed for commitment as a

defective delinquent is considerably different from those procedures followed in civil commitments outside of the defective delinquency act";

(4) it was improper for the Patuxent psychologist to read to the jury his prior criminal record;

(5) prior medical records should not have been used against him without the availability of persons making such medical entries for cross-examination by the defense.

In an unreported opinion, *Martin v. Director*, No. 23, September Term, 1973, Defective Delinquent, filed 16 May 1973, we denied the application as to reasons (1), (2), (4), and (5). We noted that under reason (3) Martin contended that:

(i) the power of the State to have a determination of his defective delinquency expired with the expiration of his sentence, citing *McNeil v. Director*, 407 U. S. 245;

(ii) the reporting provision of Code, Art. 31B, § 7 (a) is mandatory and not directory;

(iii) the procedures for determining defective delinquency are illegal because different from the procedures for civil commitment for insanity.

We denied the application as to (iii). We granted it, however, as to (i) and (ii), and by order of 17 May 1973 directed that the case be transferred to the regular appeal docket for further proceedings pursuant to Chapter 1000 of the Maryland Rules of Procedure as if the order granting leave to appeal were an order of appeal filed pursuant to Rule 1012. See, Code, Art. 31B, § 11; Rule 1094 c. We advanced the case for argument, limiting the questions to be presented to the following:

I. Is the reporting provision of Code, Art. 31B, § 7 (a) mandatory or directory?

II. May a determination of defective delinquency

· be had after the sentence for the substantive offense has expired?

## I

Code, Art. 31B, § 7 (a), after setting out by whom an examination for evaluation as to possible defective delinquency shall be made and the evaluation criteria generally, provides: "They shall state their findings in a written report addressed to the court, not later than six months from the date said person was received in the Institution for examination, or three months, before expiration of his sentence, whichever first occurs." [1] The record submitted to us does not show when Martin was received in the Institution for examination,[2] although it is patent that it was not earlier than 2 September 1971, the date of the order for his delivery for evaluation. In any event, the date is not controlling because the Court of Appeals, in *Director v. Cash,* 269 Md. 331, adhering to its prior indication in *State v. Musgrove,* 241 Md. 521, concluded that "the language in Art. 31B, § 7 (a), as amended by Chapter 491 of the Laws of 1971 is directory and not mandatory."

The point was tried and decided below on a motion by Martin for an order to transfer him from Patuxent to another facility of the State Department of Correction. *Cash* is dispositive of the issue. We hold that the court below did not err in denying the motion.

## II

Prior to the hearing at which Martin was found to be a defective delinquent, he filed a second motion for an order to transfer him from Patuxent. This motion relied on *McNeil v. Director,* 407 U. S. 245. Martin alleged that he had fully served the sentence imposed on him upon his conviction of petit larceny in the Circuit Court for Montgomery County.

---

1. As amended by ch. 491, Acts 1971, effective 1 July 1971.

2. The State claimed below that Martin was received in the Institution on 22 September 1971. Defense counsel said that in the Institution's records the date was variously shown as 3 September, 14 September and 21 September. The correct date was apparently not established.

He contended that *McNeil* proscribed a determination of defective delinquency after the sentence for the substantive offense had expired. The court below denied the motion.

After being convicted and sentenced for a criminal offense, McNeil was ordered to be committed to Patuxent for evaluation as a possible defective delinquent. He refused to cooperate with the examining staff and although he was never determined to be a defective delinquent upon a judicial hearing, he remained confined in the Institution. He filed a petition for post conviction relief, alleging that the State's power to hold him under the order made on the basis of an *ex parte* judicial determination that there was reasonable cause to believe that he may be a defective delinquent had expired because his sentence had expired. The trial court denied relief, holding that a person referred to Patuxent for the purpose of determining whether he is a defective delinquent may be detained in Patuxent until the procedures for such determination have been completed regardless of the expiration of the criminal sentence. The Court of Appeals denied leave to appeal and the Supreme Court of the United States granted certiorari, *McNeil v. Director*, 404 U. S. 999.

The opinion of the Court held that McNeil was entitled to be released. It found that he was "confined in Patuxent without any lawful authority to support that confinement. His sentence having expired, he is no longer within the class of persons eligible for commitment to the Institution as a defective delinquent." *McNeil v. Director*, 407 U. S. at 252.

In reaching its holding, the Court considered and rejected three contentions of the State. First, the State contended that McNeil had been committed merely for observation, and that a commitment for observation need not be surrounded by the procedural safeguards (such as an adversary hearing) that are appropriate for a final determination of defective delinquency. The Court said, at 249-250: "A confinement that is in fact indeterminate cannot rest on procedures designed to authorize a brief period of observation . . . If the commitment is properly regarded as a short-term confinement with a limited purpose, as the

respondent [State] suggests, then lesser safeguards may be appropriate, but by the same token, the duration of the confinement must be strictly limited." [3] Second, the State claimed that McNeil himself prevented the State from holding a hearing on his condition and argued that thus, his continued confinement was analogous to civil contempt. The Court found, at 251: "The contempt analogy cannot justify the State's failure to provide a hearing of any kind." It observed that "if confinement is to rest on a theory of civil contempt, then due process requires a hearing to determine whether petitioner has in fact behaved in a manner that amounts to contempt. At such a hearing it could be ascertained whether petitioner's conduct is willful, or whether it is a manifestation of mental illness, for which he cannot fairly be held responsible." At 251. Finally, the Court gave short shrift to the suggestion that McNeil was probably a defective delinquent, because most noncooperators were, so that, the State argued, his confinement also rested on the underlying purposes of the Defective Delinquency Law. The Court said, at 251:

> "But that argument proves too much. For if the Patuxent staff members were prepared to conclude, on the basis of petitioner's silence and their observations of him over the years, that petitioner is a defective delinquent, then it is not true that he has prevented them from evaluating him. On that theory, they have long been ready to make their report to the Court, and the hearing on defective delinquency could have gone forward."

In *Cash*, the Court of Appeals made apparent that it would apply the rule of *McNeil* only to those cases in which the sentences had expired.[4] And it gave clear indication that

---

**3.** The Court noted, at 250: "We need not set a precise time limit here; it is noteworthy, however, that the Maryland statute itself [Code, Art. 31B, § 7 (a)] limits the observation period to a maximum of six months. While the state courts have apparently construed the statute to permit extensions of time [referring to *State v. Musgrove, supra,* and *Mullen v. Director,* 6 Md. App. 120], nevertheless the initial legislative judgment provides a useful benchmark."

**4.** The Court of Appeals said: "The *McNeil* case, *supra,* is clearly

even in such cases the rule would be afforded limited application. "Even in regard to persons held at Patuxent whose original criminal sentences had expired, *McNeil* indicates to us that the decision is to be narrowly applied." 269 Md. at 345. It pointed out that it was evident that the Supreme Court's concern was for what it considered to be, so far as McNeil was concerned, a permanent commitment upon an *ex parte* order committing him for observation and evaluation as a defective delinquent. It was under the circumstances that McNeil had already been confined for six years and was still adamant in his refusal to cooperate with the examining authorities at Patuxent that the Supreme Court found applicable its recent decision in *Jackson v. Indiana*, 406 U. S. 715, which held that where a commitment to determine whether one charged with a crime was mentally incompetent to stand trial was permanent in its practical effect, due process required safeguards commensurate with a long-term commitment.

Martin was nowise in the position of McNeil. He was not being held beyond the expiration of his sentence, as was McNeil, "permanently", in effect, under an *ex parte* order committing him for examination and evaluation. The sixteen months Martin was sentenced to serve (eighteen months less two months credit for jail time served) would normally expire 2 January 1973.[5] He had been examined and evaluated prior thereto. The report of examination, including the evaluation that he met the definition of a defective

distinguishable from the cases now before us in that in *McNeil* the sentence of McNeil had expired, whereas in the present case, none of the sentences of the petitioners had expired." 269 Md. at 345.

5. Martin suggests that his sentence would have expired 1 July 1972 with diminution of the period of confinement under Code, Art. 27, § 700. We refuse to speculate that Martin would have been entitled to such diminution had he been incarcerated only under his original criminal sentence. We observe that Code, Art. 31B, § 9 provides that it is when a defendant is found not a defective delinquent and returned to the Department of Correction to begin or resume his period of confinement his criminal conviction as if he had not been examined for possible defective delinquency that he shall receive full credit for such time as he has already spent in the institution for defective delinquents "including such allowances (or disallowances) relating to good behavior and/or work performed as the Board of Correction may determine under the provisions of § 688 [700] of Article 27 of the Code."

delinquent and the recommendation that he be committed to Patuxent in accordance with Code, Art. 31B, was dated 1 February 1972, mailed to the court on 21 March, and filed by the court on 3 April. On 5 April the State requested a hearing. Martin was brought into court on 21 April and counsel appointed to represent him. He prayed for injunctive relief on 19 May and a hearing was held on 25 May at which relief was denied. Hearing on the defective delinquency determination was set for 24 October 1972 but was changed upon motion by the State, about a month before the date set, for good reason. We do not know why the case was not rescheduled until 11 January 1973, but it is likely that it was due to the assignment caseload of the courts. In any event, these circumstances make *Martin* readily distinguishable from *McNeil.* We posit that Martin's position places him without the ambit of the *McNeil* rationale and that the *McNeil* ruling, to be narrowly applied, does not serve to make his confinement at the Institution unlawful. In *Chambers v. Director,* 244 Md. 697, the Court held under the authority of *Daugherty v. Director,* 235 Md. 662, that a court of the circuit level "retains jurisdiction to try the issue of defective delinquency if the original commitment to Patuxent was made prior to the expiration of the original sentence, even though the latter may have expired before trial." [6] Although this rule may no longer be controlling in the circumstances of *McNeil,* we deem it viable in the circumstances of the instant case as in accord with Code, Art. 31B, § 6 (e).[7] Martin was entitled to have the issue of defective delinquency tried within a reasonable time after the Patuxent Institution had a reasonable time to make its

---

**6.** We find it obvious that in referring to "the original commitment" the Court meant the order committing Chambers to Patuxent for examination and evaluation as a possible defective delinquent, and that by "trial" it meant the hearing to determine whether he was a defective delinquent.

**7.** The statute provides that after the court has ordered an examination of a person for possible defective delinquency ". . . said person shall be retained in custody, initially of the Department of Correction until his transfer to Patuxent Institution and thereafter in the custody of Patuxent Institution, until such time as the procedures of this subtitle for the determination of whether or not said person is a defective delinquent have been completed, without regard to whether or not the criminal sentence to which he was last sentenced has expired."

findings. *Roberts v. Director*, 226 Md. 643, 650. We believe that the issue of Martin's defective delinquency was tried within such time that due process of law was not offended. We find the delay not unreasonable in the circumstances.[8] We hold that the court below did not err in denying the motion to order the transfer of Martin from Patuxent Institution.

> *Order of 12 January 1973 of the Circuit Court for Montgomery County that Howard Martin, Jr. be committed and returned to the Patuxent Institution for confinement as a defective delinquent for an indeterminate period and until released by due process of law affirmed.*

---

**8.** Martin claims that the holding of the Court of Appeals in *McCloskey v. Director*, 230 Md. 635, 637 that the constitutional right to a speedy trial under the Maryland and United States constitutions, being specifically limited to "criminal prosecutions", is not applicable to defective delinquency hearings, is no longer valid. We do not agree. We adhere to the principle that the speedy trial guarantees apply only to criminal prosecutions. We think, however, that defective delinquency commitment proceedings are subject to due process and equal protection of the law.