MERHL SMITH, JR. *v.* DIRECTOR, PATUXENT
INSTITUTION

[No. 957, September Term, 1974.]

*Decided July 25, 1975.*

The cause was argued before ORTH, C. J., and MELVIN, J.,
and EDWARD F. BORGERDING, Administrative Judge of the
District Court of Maryland for District 1, specially assigned.

*Murray L. Deutchman, Assigned Public Defender*, for appellant.

*Bruce C. Spizler, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Robert S. Rothenhoefer, State's Attorney for Frederick County*, and *Lawrence A. Dorsey, Jr., Assistant State's Attorney for Frederick County*, on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

On 22 March 1971 at a bench trial in the Circuit Court for Frederick County Merhl Smith, Jr.[1] was convicted of robbery and sentenced to 8 years to begin at the expiration of the sentence imposed on him on 8 September 1967. The judgment was affirmed on appeal. *Smith, et al. v. State*, No. 242, September Term, 1971, filed 22 November 1971, unreported, *cert. denied*, 264 Md. 751.

On 23 March 1971 the court ordered the Commissioner of Correction to deliver Merhl into the custody of the Director of Patuxent Institution for examination and evaluation as a possible defective delinquent. Code, Art. 31B, § 6 (b). He arrived at Patuxent about 25 May 1971 and refused to submit to examination or to participate in testing procedures. Because of his failure to cooperate, the Patuxent staff indicated about 30 June 1972 that they were unable to evaluate him. In July 1972 Merhl was one of a number of Patuxent patients who petitioned the Circuit Court for Montgomery County for the issuance of a writ of *habeas corpus*, seeking release from the Institution because no evaluation of them had been made within six months of their arrival pursuant to Code, Art. 31B, § 7 (a). On 18 August 1972 Patuxent filed a report in the Circuit Court for Frederick County giving the opinion that Merhl met the definition of a defective delinquent. On 24 August 1972 that court summoned Merhl before it and advised him of the

---

1. Merhl Smith, Jr. was also known as Merhl Smith, Billy Smith, Willie Smith, Robert Smith and Merhl Stanley Smith. He was jointly indicted and jointly tried with Ronnie Smith who was also convicted of robbery and sentenced to 6 years.

substance of the report. He was informed that there would be a hearing to determine whether he was a defective delinquent and that counsel would be appointed to represent him. Art. 31B, § 8 (a).

On 4 October 1972, the Circuit Court for Montgomery County, acting in the *habeas corpus* proceeding, concluded that the reporting provisions of Art. 31B, § 7 (a) were mandatory, and because there was no compliance with them, Merhl was entitled to be released from Patuxent and transferred to the Division of Correction for the service of his original sentence. It issued an order to that effect. The Director took a timely appeal from the order to the Court of Special Appeals. The Court of Appeals granted certiorari before decision by us. It reversed the order. *Director v. Cash*, 269 Md. 331, decided 14 June 1973. Merhl was returned to Patuxent about 19 June. On 8 October 1973 Patuxent resubmitted the evaluation of him made under date of 18 August 1972. On 23 October 1973 he was summoned before the Circuit Court for Frederick County, advised again pursuant to Code, Art. 31B, § 8 (a), and informed that hearing to determine defective delinquency would be held on 20 November 1973. On 31 October he filed a motion to dismiss the defective delinquency hearing. On 5 November he moved for permission to employ a private psychiatrist to examine him pursuant to Code, Art. 31B, § 7 (b), and for a postponement of the hearing pending the examination. The motions were heard on 8 November. On 4 February 1974 the motion to dismiss was denied. Brian Crowley, M.D. was appointed by the court to examine Merhl and evaluate him as a possible defective delinquent. In September 1974 Merhl was informed that the defective delinquency hearing was scheduled for 15 November. On 13 November he moved again for a dismissal and the motion was denied on 15 November. Trial proceeded on that date before a jury. The jury found him to be a defective delinquent. By order of 15 November 1974 he was committed to Patuxent Institution "for an indeterminate period, without any maximum or minimum limit." He applied for leave to appeal. We granted the application on 14 January 1975 and ordered the case

transferred to our regular appeal docket. Art. 31B, § 11; Maryland Rule 1094 c. Briefs were filed. Oral argument was made on 23 June 1975.

## Questions Presented

Merhl presents these questions on appeal:

"1. Whether the delay between Appellant's commitment to Patuxent and his trial was so great that it denied the Appellant due process of law.

2. Whether the order of March 22, 1971 referring the Appellant to Patuxent Institution was validly entered by the Circuit Court for Frederick County, Maryland.

3. Whether the failure to provide the Appellant with an opportunity for a hearing on the Order referring him to Patuxent Institution was a denial of due process of law.

4. Whether the Court abused its discretion in limiting cross examination of Dr. Brian Crowley on the issue of whether Appellant's confinement at Patuxent pending a diagnosis could have caused Appellant to develop the characteristics of a defective delinquent.

5. Whether the Appellant was denied a fair trial when the Court interrupted counsel for Appellant to differ on recollection of facts and then failed to instruct the jury that the jury was the finder of facts.

6. Whether the Court invaded the province of the jury when the Court instructed that a determination of defective delinquency based only on the historical data is 'valid' where a main issue in the defense was the method of evaluation used by Patuxent."

The sixth question is determinative of this appeal. The State requested the court to instruct the jury as follows:

"A diagnosis of an individual referred to

Patuxent Institution for examination to determine whether or not he is a Defective Delinquent, may be made on the basis of historical data in the file of each individual when the individual declines to cooperate in the examination process. Such a diagnosis is considered valid."

At the close of all the evidence, there was a hearing concerning instructions held out of the presence of the jury. The State referred to the above instruction and Merhl's counsel objected: "Your Honor, I think this goes to one of the key issues in the case, and I don't think the jury should be instructed on this. I think it's a question — otherwise it takes away all my cross-examination of the — of the procedure used." The court opined that the Court of Appeals said in *Director v. Cash*, 269 Md. 331 that "you can base the determination of defective delinquency on historical data, without personal interview." Merhl's counsel did not think *Cash* said that. "I think I ought to be able to argue to the jury that the procedure used here wasn't the procedure they should have used, that they should have used some other procedure, they should have had more testing or done something else." The court asked Merhl's counsel if he found any fault with the court stating that "examination based on historical data is a valid method of determining whether or not a person is a defective delinquent" and counsel replied that he did find fault with it. The court, however, thought "that it is a proper instruction, that it is a valid method . . . I think the jury has a right to know whether or not that is a valid method, particularly when it's been held to be by the Court of Appeals." The transcript reads further:

"THE COURT: All right, now. 'The Court of Appeals has held that a valid method of determining defective delinquency may be based on historical data. It is your determination — it is for you to determine whether or not there was sufficient historical data here to' — what would you suggest?

MR. DEUTCHMAN [Merhl's Counsel]: Ah, if

Your Honor would add to that phrase the fact that; that they may in weighing the testimony of the experts, weigh the procedures that they used in reaching their expert opinions, as well as their opinion.

THE COURT: Well, I will add that.

MR. DEUTCHMAN: All right, I think that would get around both.

THE COURT: How about if I add, 'An expert opinion is only as good as the facts and reasons upon which it is based'?

MR. DEUTCHMAN: All right, 'and the procedures used to reach it,' because that would have particular importance to this case here."

In charging the jury the court told them they were bound by the law as it instructed them. It read to them the statutory definition of a defective delinquent, explained the burden of proof, and discussed the elements of defective delinquency. It then said:

"The finding of defective delinquency must be based on medical and psychiatric evaluations and depends on a diagnosis and prognosis using acceptable and recognized medical and psychiatric procedures. In evaluating the testimony of witnesses you may consider the procedure used and the means chosen by each of the experts to reach the opinion given.

Now, in this particular case there is evidence that at least one of the expert witnesses based his testimony on facts received purely from the file — historical data — and not on any personal interview. The other one had the benefit of a personal interview plus the historical data in the file. Now, the Court of Appeals has held that one may determine defective delinquency based on historical data alone as a valid method in determining whether a person is in fact or is not a defective delinquent."

It then talked about expert testimony and the weight to be given it. "You may reject the [expert's] opinion in whole or in part, and you should determine the quality of the opinion on the basis of them, or on the reasons on which it is based. An expert opinion is only as good as the facts or reasons on which it is based." It concluded the charge by declaring that in order to return a verdict that Merhl was a defective delinquent, the jury must find that he manifests each and every one of the requirements of the statute "as of now", and added the caution that a person is not a defective delinquent merely because he evidences criminal behavior.

Opportunity was given counsel to make objection in open court out of the hearing of the jury as provided by Maryland Rule 554 d. Merhl's counsel objected "to the Court's recitation of the *Cash* case language, inserting the method of evaluation. I believe that that is a matter solely for the jury to determine." The judge overruled the objection: "Well, I think we've gone over that in preliminary matters and I've stated my position, and of course you have the exception on the record."

It is manifest that Merhl's counsel made clear his objection to that portion of the instruction in which the court said that "one may determine defective delinquency based on historical data alone as a valid method in determining whether a person is in fact or is not a defective delinquent." The point is properly preserved on appeal. Rule 554, e.

We think the court erred. Before *Weeder v. State,* 274 Md. 626, we would not have thought so. In *State v. Weeder,* 22 Md. App. 249, we held, on the basis of our interpretation of past Court of Appeals opinions, that an evaluation of defective delinquency could not be frustrated by an uncooperative inmate if it could be based on historical data. Granting certiorari, the Court of Appeals reversed us. It explained what it intended to say in its prior opinions on the point, and found our reading of those cases overly broad. It did not delineate precisely what was required [2] but it made

2. The Court said, at 632: "We do not propose here to delineate with any

clear that historical data alone was not enough. See *Lawless v. Director*, 27 Md. App. 453. In the light of the opinion of the Court of Appeals in *Weeder*, it is patent that the challenged instruction here was not a correct statement of the law. We cannot say that the error did not influence the jury in arriving at their verdict. It requires that Merhl have a new trial.

Because of our decision with regard to the sixth question, we have no need to reach questions four and five. We consider questions one, two and three, however, for the guidance of the court below on retrial.

As for question one, for substantially the same reasons set out in *Ronnie Smith v. Director*, 27 Md. App. 618, factually comparable to the case before us, we find that the delay between Merhl's commitment to Patuxent and his trial did not, in the circumstances, deny him due process of law.

With respect to questions two and three, we hold that the order of 23 March 1971 referring Merhl to Patuxent was validly entered and that no hearing as to it was constitutionally required.

The order of 23 March 1971 directed the Commissioner of Correction to deliver Merhl into the custody of the Director of Patuxent, "who shall cause him to be examined for the purpose of determining whether or not he is a defective delinquent" as defined by Art. 31B, § 5, and that he remain in such custody until "the Court shall have received a written report on [him] from the Institution and shall issue its further Order in the premises". It set out that Merhl had been convicted in the Circuit Court for Frederick County of robbery and sentenced on 22 March 1971 to the jurisdiction of the Department of Correction for a term of 8 years, to commence at the expiration of the sentence imposed in No.

---

precision the alternate procedures to be followed by the medical, psychiatric and psychological team, because we regard this as far beyond the horizons of judicial expertise. It occurs to us, however, that at a minimum the report of the staff should include relevant information from the study made by the social worker, a summary of the inmate's prior arrests and convictions, incident reports, disciplinary infractions, observations made by guards, fellow inmates and staff, and at least a minimal personal confrontation between the inmate and staff."

2017 Criminals in said court, and that there was reasonable cause to believe that he may be a defective delinquent as defined by § 5 of Art. 31B. The order was issued in accordance with Art. 31B, § 6, which provides "For whom requests may be made," subsection (a); "Who may make request," subsection (b); "When requests may be made," subsection (c); "How requests made," subsection (d); and "Custody after examination ordered," subsection (e).

Merhl urges that reasonable cause to believe that a person is a defective delinquent must be affirmatively shown before an order may issue committing him to Patuxent for evaluation. He suggests that there should be a hearing on the matter. We do not agree and have said so. In *Bosley v. State,* 14 Md. App. 83, 91, we observed: "[W]e have heretofore held that an individual 'has an opportunity to contest his determination of defective delinquency but he has no statutory right to contest an order of the judge that he undergo such an examination.' See *Wise v. Director,* 1 Md. App. 418, 423." We adhere to that view and see no denial of due process in such procedure.

*Order of 15 November 1974 committing appellant to Patuxent Institution reversed; case remanded for a new trial.*