## SIMMONS v. DIRECTOR OF PATUXENT INSTITUTION

[App. No. 72, September Term, 1962.]

*Decided April 4, 1963.*

Before the full Court.

SYBERT, J., delivered the opinion of the Court.

On March 19, 1958, Wilfred C. Simmons, the applicant, pleaded guilty before Chief Judge Harris in the Circuit Court for Allegany County to a charge of maiming a woman and was sentenced to serve five years in the Maryland House of Correction. In later proceedings the trial judge characterized the maiming as sadistic and as one of the most cruel and unwarranted attacks that had come to his attention. The applicant was transferred later to Patuxent Institution for examination, and, after a hearing in the Circuit Court for Allegany County, he was on April 10, 1959, found to be a defective delinquent and was committed to Patuxent Institution, under the provisions of Code (1957), Art. 31B, Sec. 9 (b). A petition for redetermination of his status as a defective delinquent was filed in the above named court and on May 4, 1962, after a hearing before Chief Judge Harris, the applicant was recommitted to Patuxent Institution. The applicant thereupon filed an application for leave to appeal to this Court on the ground that the Circuit Court in connection with the recommitment made no finding as to whether applicant was or was not a defective delinquent. In a per curiam opinion filed on October 9, 1962 we remanded the case for further proceedings "to the end that the lower court may decide whether or not the applicant was a defective delinquent at the time of the hearing." *Simmons v. Director,* 229 Md. 638, 184 A. 2d 622 (1962).

At a hearing held on December 20, 1962 before Chief Judge Harris, at which further testimony, in addition to that adduced at the hearing on May 4, 1962, was heard, it was held that the applicant was still a defective delinquent and he was recommitted to the Patuxent Institution for further study and treatment.

In this application for leave to appeal, applicant contends that "while there may have been ample evidence of emotional unbalance" adduced at his hearings, there was a lack of evidence that during his confinement in Patuxent Institution he had exhibited any persistent aggravated antisocial or criminal behavior evidencing a propensity toward criminal activity, and that therefore he could not now be held to be a defective de-

linquent as defined in Code (1962 Cum. Supp.), Art. 31B, Sec. 5. Applicant claims that the lower court's decision on redetermination was based on, or influenced by, the nature of the original crime committed by him, and not solely upon proof as to his present status.

Article 31B, Sec. 5, reads as follows:

"For the purposes of this article, a defective delinquent shall be defined as an individual who, by the demonstration of persistent aggravated antisocial or criminal behavior, evidences a propensity toward criminal activity, and who is found to have either such intellectual deficiency or emotional unbalance, or both, as to clearly demonstrate an actual danger to society so as to require such confinement and treatment, when appropriate, as may make it reasonably safe for society to terminate the confinement and treatment."

Section 9 (b) of Art. 31B provides that if the court finds the defendant to be a defective delinquent as defined in Sec. 5, it shall order him committed to the institution for an indeterminate period. Section 10 (a) permits the filing, after the lapse of a period therein mentioned, of a petition "for the purpose of having the defective delinquency of such person redetermined" by a jury, if requested, or by the court. Section 10 (a) provides no criteria to govern the redetermination (other than those set out in Sec. 5).

At the hearings to redetermine the status of the applicant, the lower court had before it reports of Dr. Boslow, the Director of Patuxent and a qualified psychiatrist, Dr. Kohlmeyer, a qualified staff psychiatrist, Dr. Manne, a qualified staff psychologist, and Dr. Trevaskis, a qualified psychiatrist who had examined the applicant, at the latter's request, prior to the original commitment and prior to each of the redetermination hearings. Drs. Boslow and Trevaskis testified. While all of them agreed that the applicant had made some progress in his adjustment, the staff members reported that he was still a defective delinquent and that it would not be safe to release him into society. Dr. Trevaskis disagreed. While his report states that he could find no reason to change his original diagnosis

of "sociopathic personality disturbance and associated chronic alcoholism", it points out that the applicant had an outstanding record at Patuxent, and concludes that maximum institutional benefit has been achieved and that "this man ought to be a fair risk to release into society".

On the other hand, Dr. Kohlmeyer, who prepared a report for Patuxent's Board of Review, wrote:

"Simmons has been in group therapy with me since September 1961. * * * He has some rather vague notions about the emotional trends leading to his present crime but when pressed on the subject he becomes anxious and confused. He is a self-centered and schizoid individual who communicates very little with others. From occasional remarks one can gather that he is still quite involved in sexual fantasies and has considerable conflict in this field. He has some notion of the role which alcohol has played in disintegrating his defenses, but on the other hand is not convinced that he can give up drinking altogether if released to society.

"Simmons has made a very good institutional adjustment but the staff of the institution feels that this has to stand the test of time. He is still classified as a defective delinquent. No change in his status is recommended at the present time."

Dr. Manne, the staff psychologist, came to substantially the same conclusion. His report states, in part:

"The patient seems to indicate that he has his feelings under somewhat better control than he had before, but this control seems largely intellectual. He still has a poor self-concept, and his relationships with authority seem to be quite disturbing. He displays anxiety in his relationships with authority, and in his perception of male and female sexuality. When in an anxiety provoking situation, or one which rouses his emotions, the patient indicates that he can respond with aggressive feelings. He also seems to indicate

that he perceives the male sexual role as being a highly aggressive role.

"The patient still appears to indicate a low frustration tolerance, and the capacity to act-out on aggressive impulses when in interpersonal situations. His poor self-concept, which has been bolstered somewhat during his stay at this Institution, still exists. It is the Examiner's feeling that this patient is still an inadequate individual who can respond with aggressive outbursts when he finds himself in interpersonal situations."

It was Dr. Manne's conclusion that the improvement made has not as yet reached the point where it would be safe to permit the applicant to enter society unless there were extremely close supervision. He concludes, "if he were placed in an unstructured environment, such as society, he would probably continue to act-out unconscious aggressive sexual drives".

Finally, Dr. Boslow, in his Interval Notes of November 8, 1962 and December 18, 1962, in concurrence with the conclusion reached by the others, felt that "it would be extremely inadvisable to release * * * [the applicant] from the institution * * * [as h]e is still considered to be a defective delinquent." In his opinion, at the time of the November 8, 1962 examination, the applicant was very close to a psychotic episode. The applicant, 41 years of age, was found to have an I.Q. of 104, indicating average intelligence. Based upon the findings and recommendations of the institution's trained specialists, the lower court recommitted the applicant to Patuxent as a defective delinquent.

No application for leave to appeal from the original commitment in 1959 of the applicant as a defective delinquent was ever filed, nor is that commitment challenged now. It was based upon the crime committed by the applicant, coupled with a finding that he exhibited such emotional unbalance as to clearly demonstrate an actual danger to society. However, in the present application the applicant, while virtually conceding the sufficiency of the evidence produced at his hearings to show continuing emotional unbalance, contends that he should now be re-

leased from Patuxent on the ground that the evidence fails to show that during his confinement there he demonstrated persistent aggravated antisocial or criminal behavior, evidencing a propensity toward criminal activity. He maintains that in the absence of such a showing, even in redetermination proceedings, the person involved cannot be held to be a defective delinquent under the definition set out in Sec. 5. He also argues that the lower court was not entitled to consider the nature of his original offense in determining whether or not he still is a defective delinquent.

We think that the questions raised have already been answered by this Court in *Schultz v. Director,* 227 Md. 666, 177 A. 2d 848 (1962). In that case, which involved a request for redetermination of the status of an inmate of Patuxent, the inmate asserted that the lower court had erred in refusing an instruction to the effect that the jury could only consider the fact of his original conviction, and not the nature of the crime, on the issue of whether or not the defendant was still a defective delinquent. In finding no error, Judge Henderson said for the Court (at p. 668 of 227 Md.) :

"* * * The jury was entitled to consider the nature of his previous offense in order to determine whether he had demonstrated persistent, aggravated, antisocial or criminal behavior, so as to demonstrate an actual danger to society. In that connection they were entitled to consider the nature of the crime, and not merely the fact of conviction. * * *"

In the same case, the inmate also claimed error in the refusal of an instruction that the jury should disregard the fact that the inmate had formerly been adjudicated a defective delinquent. We said (ibid.) :

"* * * Again we find no error. The case could not be tried in a vacuum. The fact of the prior adjudication was relevant and a part of the past history upon which the experts, and ultimately the jury, were called upon to pass."

See also *Queen v. Director,* 226 Md. 664, 174 A. 2d 351 (1961), a redetermination case, in which an inmate contended that he was placed in double jeopardy because the "recommitment was based on evidence of his past record, which was used on the original commitment." We said (at p. 665 of 226 Md.) : "There is no merit in the contention. See *Eggleston v. State,* 209 Md. 504, 513. Antecedent behavior is a relevant inquiry, and violates no Constitutional rights."

The cases cited recognize that in redetermination proceedings the inmate's propensity toward criminal activity, as manifested through persistent aggravated antisocial or criminal behavior, has been established by his initial commitment to Patuxent, and that the overriding consideration is whether it is "reasonably safe for society to terminate the confinement and treatment". In such cases the propensity toward criminal activity is part of the past history of the inmate. We cannot suppose that the Legislature intended the anomalous and dangerous result contended for by the applicant here—that an inmate who had committed a serious crime induced by such intellectual deficiency or emotional unbalance, or both, as to clearly demonstrate an actual danger to society, must be released if he does not exhibit overt and aggravated antisocial or criminal behavior in Patuxent Institution, even though his dangerous intellectual deficiency or emotional unbalance persists. The answer is given in *Eggleston v. State, supra,* where we reviewed the history and purpose of the Defective Delinquent Law at length, and observed (at p. 515 of 209 Md.) : "The extent of detention depends primarily in each case upon medical findings as to diagnosis and prognosis, not upon a finding of the elements of a criminal offense. * * * The detention is not by way of punishment for a crime, but is preventive and therapeutic."

The lower court was entitled to consider the nature of the applicant's original offense and the fact of his prior adjudication, as we have noted, and to rely upon the expert findings and conclusions of the professional personnel at Patuxent, which are to be accorded very serious consideration. *Palmer v. State,* 215 Md. 142, 152, 137 A. 2d 119 (1957). We cannot find that the court was clearly wrong in ordering the recommitment.

*Application denied.*