## BARNES *v.* DIRECTOR OF PATUXENT INSTITUTION

[App. No. 133, September Term, 1964.]

*Decided August 5, 1965.*

HAMMOND, J., delivered the opinion of the Court.

The applicant Barnes has thrice been determined to be a defective delinquent, first by a jury in 1958, next in 1961 by Judge Manley who found as a fact that he would be a threat to society if he was released (see *Barnes v. Director,* 227 Md. 641, 642, *cert. den.* 368 U. S. 1004, wherein his application for leave to appeal was denied), and last by Judge Byrnes in October 1964.

In his application for leave to appeal from the finding of Judge Byrnes, Barnes claims through his court-appointed counsel, that there was insufficient evidence to support the finding of defective delinquency, the evidence shows that he is not being, and not likely to be, improved or rehabilitated by treatment at Patuxent and therefore should be released and that if he is to be indefinitely confined without effective treatment the provisions of law providing for such indefinite detention and the resulting detention are unconstitutional.

We have caused the record of the trial before Judge Byrnes to be written up. It makes clear beyond doubt that the Patuxent staff, including Dr. Boslow, were of the firm opinion that Barnes is mentally defective, emotionally unbalanced and a serious potential threat to society, and that Dr. Pope, the psychiatrist furnished Barnes by the State and a doctor in whom he has confidence, concurs.

Dr. Boslow's testimony was that Barnes came to Patuxent in 1957, when he was sixteen, with a record of breaking and entering, larceny and robbery. He had earlier twice been com-

mitted to Crownsville. In 1959 he was sent from Patuxent to Crownsville for a stay of six months. He was transferred for some months in 1960 to Clifton T. Perkins State Hospital and again sent there in 1961. At Crownsville he made aggressive homosexual attacks on other patients and at Perkins hit a patient on the head with a baseball bat. Barnes' record at Patuxent has been "extremely poor." He has received many "disciplinary tickets" for fighting, possessing contraband, homosexual attacks and making false reports against an officer. He would not attend school regularly. His behavior at group therapy classes so disrupted the classes that he had to be dropped. He has not changed since he first entered Patuxent and "* * * is still a mental defective who is emotionally unstable, and with the slightest provocation would have a tendency to act in an impulsive, aggressive, hostile manner. * * * he still is a danger to society."

Dr. Boslow testified further that Barnes has been "a constant source of difficulty" and has had to be put in tier M-1, the most restricted tier, in which "we keep the individuals who cannot live in population." Dr. Boslow felt that Barnes has:

"* * * little concern for others about him; and he must have what he wants when he wants it without regard to whatever happens. He is an infant in an adult form. * * * unfortunately, he would act precisely the same way outside in the world as he does at Patuxent. * * * and the only thing I can say is that society must be protected from this man. * * * because he recognizes no limitations, either moral or social."

As to hope for Barnes' improvement, Dr. Boslow said: "The material is very poor to work with * * *. I just hope that through the years he may smooth out sufficiently to be able to be taught, as you would a child."

Thus, the answers to the second and third contentions of the applicant are that he is not being improved or rehabilitated at Patuxent because he is not mentally or emotionally capable of receiving or responding to treatment and that it is not unconstitutional to keep him confined as long as he would be a serious threat to society if he were at large.

Code (1964 Supp.), Art. 31B, Secs. 1-19, make clear that the Legislature intended that one who came within the definition of a defective delinquent must remain incarcerated until his demonstrated "persistent aggravated antisocial or criminal behavior," caused by mental deficiency or emotional unbalance or both and constituting an actual danger to society was not, by reason of passage of time or treatment or both, likely to reoccur and, therefore, his release was "reasonably safe for society" (Sec. 5). Improvement was to be sought by psychiatric and psychological treatment but it was recognized that the treatment might be ineffective and the key to release was made the ability of the detained man to live in reasonable compatibility with his fellow man. See *Eggleston v. State,* 209 Md. 504, 515. "The extent of detention depends primarily in each case upon medical findings as to diagnosis and prognosis * * *." That the detention of one who would be an actual danger to society if at large may be for an indefinite time, perhaps for life, does not make it unconstitutional. *Eggleston v. State, supra; Meredith v. Director,* 226 Md. 653, 656, citing *Kemmerer v. Benson,* 165 F. 2d 702, *cert. den.* 334 U. S. 849, approving indefinite confinement of a sexual psychopath; *Carlesi v. New York,* 233 U. S. 51, 58 L. Ed. 843; *Graham v. West Virginia,* 224 U. S. 616, 56 L. Ed. 917, upholding the indefinite confinement of habitual criminals; and *Simmons v. Director,* 231 Md. 618. See also *Salinger v. Superintendent,* 206 Md. 623, and *Sas v. State of Maryland* (4th Cir.), 334 F. 2d 506.

*Application denied.*