STATE *v.* MUSGROVE

[No. 470, September Term, 1965.]

*Decided March 3, 1966.*

The cause was argued before HAMMOND, HORNEY, OPPEN-HEIMER and McWILLIAMS, JJ., and RAINE, J., Associate Judge of the Third Judicial Circuit, specially assigned.

*John W. Sause, Jr., Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Robert C. Murphy, Deputy Attorney General,* on the brief, for appellant.

*John S. McInerney* for appellee.

HORNEY, J., delivered the opinion of the Court.

The question presented by this appeal is whether the order of court granting *habeas corpus* and releasing a patient from Patuxent Institution was appealable under the circumstances of this case.

When Frank Harrison Musgrove entered a plea of guilty to a charge of storehouse breaking with intent to steal, the Circuit Court for Montgomery County sentenced him to the Correctional Institution for an indeterminate period of time not to exceed eighteen months from June 12, 1964, and two days later, on its own initiative, ordered him transferred to Patuxent to be examined for possible defective delinquency pursuant to the provisions of Article 31B.[1] At Patuxent, although the patient persistently refused to permit members of the staff to examine him as directed by the order of court, he did not commit any other infractions of the rules. As a result of his intransigence, however, the institution was unable to state its findings in a written report to the court within the period of six months fixed by the statute.

In his petition for a writ of *habeas corpus,* the patient, besides alleging that he had not been determined to be a defec-

---

1. The references herein to articles and sections are to the Maryland Code of 1957.

tive delinquent and was therefore "illegally confined and restrained" by Patuxent, claimed that his sentence, allowing credit for good behavior, had expired. At the hearing, the petitioner contended that because his sentence had expired and Patuxent had failed to file a report as to his condition or bring him to trial on the question of defective delinquency, he was entitled to a release. On the other hand, the State's Attorney, although conceding that the prison term of the petitioner had expired, contended that the patient should not be released because he had made it impossible for Patuxent to conduct the examination on which the report would have been based.

During the course of the proceedings before Judge James H. Pugh, the Court suggested that if an examination by the Patuxent staff was desired, the deposition of the patient for discovery purposes could have been taken. The Court further suggested that based on the prior record of the patient the staff could have reached a conclusion as to whether he was a defective delinquent, and if they concluded that he was, then the proceeding, involving a determination of his defective delinquency, could have been set down for trial, whereat the patient could have been called as a witness. The judge, although aware that he was hearing a civil proceeding, also declared that if he were the patient he would not "cooperate with" the staff by submitting to an examination because that would "be giving evidence against yourself." Later on he expressed a similar opinion by saying that regardless of "what the law says [that] would be incriminating yourself, because you would run the risk of staying in jail the rest of your life." In a written opinion filed two days later, the judge, besides saying that the time within which the institution must report the result of its findings had long since expired and that the sentence imposed on the petitioner in the criminal case had likewise expired, stated that an alleged defective delinquent was not required to talk to the staff or discuss any matters concerning his possible defective delinquency and that, since the character of the required examination was not specified, nor limited to oral discussion, it could "take any form that the * * * [staff] desire[d] to use." The order attached to the opinion granted the writ sought and released the patient from Patuxent, and the State appealed.

The first question raised by the State on appeal involves an interpretation of the meaning and purpose of the statutory requirement that the staff shall make a determination (as set forth in § 7(a) of Art. 31B) *"on the basis of all the assembled information, plus their own personal examination and study"* as to whether or not the patient is a defective delinquent. The third question, a corollary to the first, is an inquiry as to whether alternative procedures, not sanctioned by statute or rule of court, may be employed in a defective delinquent proceeding. The second question is whether an order of court transferring a person to Patuxent for an examination (pursuant to § 6 (e) of Art. 31B) *"until such time as the procedures * * * for the determination of whether or not said person is a defective delinquent* have been completed" may be defeated by the refusal of a patient to submit to such examination. The fourth and final question, which is corollarial to the second, is whether the patient should have been released on *habeas corpus* before it was shown that the criminal sentence had in fact expired.

The appellee promptly moved to dismiss the appeal on the ground that he had been confined as a result of a proceeding under Article 31B, and that the appeal was barred by the provisions of § 645A (e) of Article 27. In answering the motion to dismiss, the appellant, in addition to maintaining that the appeal was authorized because the petition neither involved the legality of a conviction, sentence or imprisonment nor confinement as the result of a proceeding under Article 31B, contended that the order releasing the appellee from confinement was unconstitutional (and therefore appealable pursuant to Maryland Rule Z56) in that it was violative of the provisions of Article 31B authorizing the confinement of a person in Patuxent until an evaluation of defective delinquency can be made. This Court, in advancing the case for argument, ordered that arguments on the motion to dismiss and on the merits be heard together.

We think the motion to dismiss the appeal must be granted because the lower court order releasing the patient on a writ of *habeas corpus* under the circumstances of this case is not appealable.

The Post Conviction Procedure Act (codified as §§ 645A

through 645J of Article 27), originally enacted by Chapter 44 of the Laws of 1958, provided, *inter alia,* the procedures for challenging the legality of incarceration under judgment of conviction of a crime and imprisonment therefor, including confinement as a result of a proceeding under Article 31B, and further provided a right to apply to this Court for leave to appeal from orders passed under the Act. And, having also provided that appeals to this Court in a *habeas corpus* case should not be permitted or entertained, the right of appeal in *habeas corpus* proceedings (theretofore provided by § 6 of Article 42) was repealed by Chapter 45. Thereafter no other change was made with respect to the right of appeal in *habeas corpus* cases until the enactment of Chapter 442 of the Laws of 1965 amending § 645A of Article 27. That amendment, in addition to rewriting subsection (a) and adding other subsections, designated former subsection (b) as subsection (e), rewrote the first sentence and added the last sentence. As amended, subsection (e) of § 645A provides in pertinent part:

> "The remedy herein provided is not a substitute for, nor does it affect any remedies which are incident to the proceedings in the trial court * * * [and certain inferior courts] or any remedy of direct review of the sentence or conviction. * * * Hereafter no appeals to the Court of Appeals of Maryland in habeas corpus * * * cases * * * shall be permitted or entertained. * * * Provided, however, that nothing in this subtitle shall operate to bar an appeal to the Court of Appeals (1) in a habeas corpus proceeding instituted under § 25 of Article 41 * * * or (2) in any other proceeding in which a writ of habeas corpus is sought for any purpose other than to challenge the legality of a conviction of a crime or sentence of death or imprisonment therefor, including confinement as a result of a proceeding under Article 31B * * *."

The effect was to allow appeals in *habeas corpus* proceedings involving extradition and constitutional rights but bar appeals in a case such as this where the purpose was to challenge the legality of the release of a person from confinement in Pa-

tuxent. See *Cumberland v. Warden,* 225 Md. 636, 171 A. 2d 709 (1961), *cert. den.* 369 U. S. 855 (1962); *Brady v. State,* 222 Md. 442, 160 A. 2d 912 (1960). In *Brady,* which was decided before the amendment made by Chapter 442 of the Laws of 1965, it was said that while the P.C.P.A. did not abrogate the remedy formerly available under the writ of *habeas corpus,* it took away the right of appeal from an order denying the writ. We think it is apparent that one of the purposes of the amendment of 1965 relating to conviction, sentence and imprisonment generally was to include confinement under Article 31B in the same category. It follows that although a patient at Patuxent may avail himself of the right provided by § 645A (a) of Article 27 to set aside or correct a sentence as well as the right to petition for *habeas corpus* provided by § 10 (c) of Article 31B, it is certain that neither a patient nor the State has a right to appeal from an adverse decision in a *habeas corpus* proceeding. But the State, principally on the theory that the remarks made by the judge during the course of the proceedings on the petition for a writ of *habeas corpus*—indicating that the patient did not have to cooperate with the staff at Patuxent because that would be giving incriminating evidence against himself—had the effect of holding that Article 31B was unconstitutional insofar as it required a patient to submit to an examination, contends that the provisions of § 19 of Article 42 afforded the State an "automatic" appeal. Section 19 provides in pertinent part that:

> "Whenever any court * * * or when any judge of any court * * * having jurisdiction * * * shall release or discharge any person * * * under the writ of habeas corpus, charged with the violation of the provisions of * * * any article or section of the Code * * * upon the ground, or for the reason, that such * * * article or section * * * is unconstitutional and void, in whole or in part, because contrary to the Constitution or Bill [Declaration] of Rights of this State, or because contrary to the Constitution of the United States, it shall be the duty of said court or judge * * * to reduce his opinion to writing * * * and to trans-

mit the original papers * * * to * * * the Court of
Appeals * * *."

Also see Rule Z56.

We may assume that had the judge released the patient on
the ground or for the reason that compelling him to submit to
an examination would be tantamount to requiring him to tes-
tify against himself, the case might be reviewable by this Court.
That, however, as we read the record, was not the reason the
judge released the patient from Patuxent. Besides noting in the
opinion that the sentence imposed by the court as well as the
time for reporting the staff findings to the court had both ex-
pired, the only other reasons assigned for releasing the patient
were that he was not obliged to discuss his shortcomings with
the staff and that the examination, since it was not limited to
oral discussions, could have taken any other form the staff chose
to use. While the interpretations the judge made as to the mean-
ing and purpose of § 7 (a) of Article 31B may have been
erroneous, it seems apparent that he did not hold that the per-
sonal examination and study that each of the designated ex-
aminers were required to make of the patient was unconsti-
tutional. The further contention of the State that the appeal
was authorized because the petitioner was not confined "as a
result of a proceeding under Article 31B" but because he had
refused to submit to an examination for possible defective de-
linquency overlooks the fact that the petitioner, who was sen-
tenced to prison as of June 12, 1964, was nevertheless confined
in Patuxent under an order of court passed two days later di-
recting that he be examined and dealt with according to the
provisions of § 6 (a) of Article 31B, that is, until the pro-
cedures for determining whether or not he was a defective de-
linquent had been completed without regard to whether or not
the criminal sentence of eighteen months to which he was sen-
tenced had expired. For the reasons stated the appeal must be
dismissed.

If this appeal was an ordinary one, then what has been said
above would be an end of the matter. But because the appeal
presents substantial questions of extraordinary public importance
and concern, we are constrained to express our opinion with

regard to them. See *Kardy v. Shook, J.,* 237 Md. 524, 207 A. 2d 83 (1965), and cases cited therein.

All of the questions presented either involve or concern the examination of a convicted person suspected of being a defective delinquent as defined in § 5 of Article 31B. Section 7 (a), involving an interpretation of the meaning and purpose of the portions italicized below, provides in pertinent part:

> "Any such examination shall be made by at least three persons \* \* \* one of whom shall be a medical physician, one a psychiatrist, and one a psychologist. They shall assemble all pertinent information about the person to be examined, before proceeding therewith, including a complete statement of the crime for which he has been sentenced, the circumstances of such crime, the court in which he was sentenced, the nature of the sentence, copies of any probation or other reports which may have been made about him, and reports as to his social, physical, mental and psychiatric condition and history. *On the basis of all the assembled information, plus their own personal examination and study of said person,* they shall determine whether in their opinion \* \* \* the said person is or is not a defective delinquent. They shall state their findings in a written report addressed to the court, no later than six months from the date said person was received \* \* \* or before expiration of his sentence, whichever last occurs. \* \* \*"

The pertinent part of § 6 (e), concerning the effect of the portion italicized below, provides that—

> "[S]aid person shall be retained \* \* \* in the custody of Patuxent Institution, *until such time as the procedures* \* \* \* *for the determination of whether or not said person is a defective delinquent have been completed, without regard to whether or not the criminal sentence to which he was last* sentenced has expired. \* \* \*"

Inasmuch as a determination of whether or not a person is a defective delinquent depends on diagnosis and prognosis,

which turns only partly on the assembled information as to his prior anti-social and criminal behavior, cf. *Simmons v. Director*, 231 Md. 618, 189 A. 2d 644 (1963), we are of the opinion that the legislature in using the term "personal examination and study" must have intended that the examiner, be he a medical physician, a psychiatrist or psychologist, would use such methods and tests to ascertain the physical, psychiatric and psychological characteristics and deficiencies of the patient as were necessary to enable the examiner to reach a valid opinion. Conceivably, this would not always require the patient to talk to the examiner although it would seem that usually it would, as the record indicates was true in the case before us. Significantly, the requirement is not only that the examination be "personal" but that it also be the "[examiner's] own." This, we think, unequivocally implies that the examiners were to apply their expert knowledge in reaching a determination as to the defective delinquency of the patient. Similar examination requirements are made for physicians certifying the need for commitment to a mental hospital. See § 31 of Article 59 as well as §§ 7, 8, 11 of the same article requiring a mental examination of defendants who plead insanity as a defense.

Certainly the statute does not imply, as the judge below indicated, that the staff could have based its conclusion as to the presence or absence of defective delinquency on the prior record of the patient. The cases indicate the contrary. See *Palmer v. State*, 215 Md. 142, 137 A. 2d 119 (1957) ; *Cowman v. State*, 220 Md. 207, 151 A. 2d 903 (1959). Nor could the "personal examination" specifically required by the statute "take any form" the examiners chose to use in the absence of other statutory or regulatory authority to do so. Furthermore, the rules relating to discovery do not support the comment of the judge that the staff should have taken the deposition of the patient instead of insisting on making an oral examination of him, because, if for no other reason, there is a distinction between mental and physical examinations and depositions and other discovery procedures which Rule 420 clearly recognizes. Nor could the dilemma be solved, as the judge further suggested, by setting the matter for a hearing and calling the patient as a witness for the simple reason that there can be no hearing, according to § 8 of Article 31B, until a report has been filed stating

that the patient is a defective delinquent, and a report could not be made until there had been an examination.

Although § 7 (a) of Article 31B provides that the examining physician, psychiatrist and psychologist shall state their findings in a written report to the court within six months or before the expiration of the sentence whichever last occurs, we are of the opinion that the order of court referring a person to Patuxent for an examination until such time as the procedures for determining whether or not such person is a defective delinquent have been completed could not be defeated by the refusal of such person to submit to the examination required by § 7 (a) if the Patuxent staff cannot make its determination without it. It is clear that a person cannot complain of the action, or inaction, of others when he is the cause of the delay that ensues. *State v. Murdock,* 235 Md. 116, 200 A. 2d 666 (1964) ; *Harris v. State,* 194 Md. 288, 71 A. 2d 36 (1950). Moreover, failure to comply with filing requirements is not always fatal. In *Hamilton v. State,* 225 Md. 302, 170 A. 2d 192 (1961), it was said that the provisions of Article 59 requiring a determination in advance of trial on the merits as to whether the defendant had sufficient mental capacity to participate in his defense were procedural and not jurisdictional. It has even been held that constitutional requirements as to filing decisions within a specified time are directory and procedural rather than mandatory or jurisdictional. *Snyder v. Cearfoss,* 186 Md. 360, 46 A. 2d 607 (1946) ; *Myers v. State,* 218 Md. 49, 145 A. 2d 228 (1958), *cert. den.* 359 U. S. 945 (1959). As we see it, there is little difference between the situation of the patient in this case, who refused to submit to an examination to determine whether or not he was a defective delinquent, and the situation of the patient in *Barnes v. Director,* 240 Md. 32, 212 A. 2d 465 (1965), who was not mentally or emotionally capable of receiving or responding to treatment. In *Barnes* it was said that the detention of one who would be an actual danger to society, if at large, for an indefinite time, perhaps for life, did not make his detention unconstitutional. In that case the failure to cooperate was at least in part involuntary : in this case the refusal to cooperate was wholly deliberate.

Finally, *because* a person sentenced on or after the effective

date of Chapter 283 of the Laws of 1963, may be detained in Patuxent under § 6 (e) as amended until the procedures for determining whether he is a defective delinquent have been completed regardless of whether or not the criminal sentence has expired *and because* such person is not entitled to credit for good behavior against the criminal sentence unless the conditions specified in § 7 (a) as amended have been met, we are of the opinion that the person so confined should not be released on *habeas corpus* until the court is satisfied, not only that the delayed delinquency inquiry permitted by § 6 (e) has been completed, but that the credit allowable for good behavior under § 7 (a) has been approved by the Board of Correction.

*Appeal dismissed; costs to be paid by the State of Maryland.*