## STATE OF MARYLAND *v.* JEFFERSON WINSTON WEEDER

[No. 101, September Term, 1974.]

*Decided July 22, 1974.*

The cause was argued before ORTH, C. J., and MORTON and GILBERT, JJ.

*Donald R. Stutman, Assistant Attorney General,* with

250

whom were *Francis B. Burch, Attorney General* and *Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* on the brief, for appellant.

*Dennis M. Henderson,* with whom was *Geraldine Kenney Sweeney* on the brief, for appellee.

Gilbert, J., delivered the opinion of the Court.

Jefferson Winston Weeder was indicted by the Grand Jury of Prince George's County for robbery, larceny, a perverted sex act and assault and battery. A plea of not guilty by reason of insanity under Md. Ann. Code Art. 59, § 25 (b), Md. Rule 720, was entered on behalf of Weeder, and he was referred to the Clifton T. Perkins State Hospital. The Medical Staff at Perkins [1] concluded that Weeder was "functioning on the Borderline Range of Mental Retardation with a Full Scale I.Q. of 73 on the Wechsler Adult Intelligence Scale. In addition, he [showed] some schizoid and anti-social personality traits." The Perkins report, nevertheless, stated that, " . . . it was the unanimous opinion of the medical staff that [Weeder] was able to understand the nature and object of the proceeding against him and to assist in his defense." The Staff further said that Weeder "did not suffer from a mental disorder at the time of the alleged offenses of such severity as to cause him to lack substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law." When the indictment was called for trial, Weeder changed his plea to "Guilty" as to counts 1 and 3. Following a presentence report, Weeder was sentenced to imprisonment for a total of eight years and was, on April 12, 1973, referred to Patuxent Institution for evaluation. It is the referral to Patuxent Institution that sets the stage for the instant case.

Patuxent filed its report with the Circuit Court for Prince

---

1. Letter dated January 23, 1973 from Robert H. Sauer, M.D., Acting Superintendent, The Clifton T. Perkins State Hospital, to Honorable Roscoe H. Parker, Associate Judge, Circuit Court for Prince George's County.

George's County, Md. Ann. Code Art. 31B, § 7, on October 30, 1973. Weeder had been admitted to Patuxent on May 16, 1973, and when he was seen by a psychiatrist exclaimed: "There ain't nothing wrong with me. I don't want to see a psychiatrist." Later the same day Weeder was again seen by the psychiatrist. At that time Weeder stated: "I am not a Defective Delinquent. That's a well-known fact." Weeder's actions from that point on degenerated from resistance to outright refusal to even see a psychiatrist. Notwithstanding Weeder's uncooperative attitude, the Patuxent Institution "Diagnostic Staff Report", grounded upon "all the available accumulated records and recent past examinations" (including the Clifton T. Perkins State Hospital report) stated that Weeder suffered from "borderline mental retardation with schizoid features", was a "danger to society" and met the definition of a Defective Delinquent as set out in Md. Ann. Code Art. 31B, § 5.

On February 14, 1974, the case was called for hearing. At that time the State asked the judge to return Weeder to Patuxent and to order him "to comply with the original order which [had] sent him to Patuxent for evaluation. Or, in the alternative, that the testimony of the psychiatrist for the defendant [Weeder] be . . . not allowed in this case." The State's request was denied, and the matter proceeded before the judge, sitting without a jury.

The State produced the testimony of Mr. Paul Edwards, a Patuxent Staff psychologist. Mr. Edwards candidly admitted that he did not personally examine Weeder because of Weeder's steadfast refusal to submit to examination. Mr. Edwards read into the record, over objection, the complete Diagnostic Staff Record of the Patuxent Institution, but the hearing judge subsequently granted Weeder's motion to strike Edwards' testimony. The judge then dismissed the petition. Thereafter, the court signed an order directing that Weeder be transferred from Patuxent to the Division of Correction. The same date the State made application to this Court for leave to appeal. We granted the application and transferred the case to the regular appeal docket.

The hearing judge relied upon *State v. Musgrove*, 241 Md. 521, 217 A. 2d 247 (1966), wherein the Court of Appeals said, at 531:

" . . . [W]e are of the opinion that the legislature in using the term 'personal examination and study' must have intended that the examiner, be he a medical physician, a psychiatrist or psychologist, would use such methods and tests to ascertain the physical, psychiatric and psychological characteristics and deficiencies of the patient as were necessary to enable the examiner to reach a valid opinion. Conceivably, this would not always require the patient to talk to the examiner although it would seem that usually it would, as the record indicates was true in the case before us. Significantly, the requirement is not only that the examination be 'personal' but that it also be the '[examiner's] own.' This, we think, unequivocally implies that the examiners were to apply their expert knowledge in reaching a determination as to the defective delinquency of the patient. . . .

Certainly the statute does not imply, as the judge indicated, that the staff could have based its conclusion as to the presence or absence of defective delinquency on the prior record of the patient. . . . "

In *Marsh v. State*, 22 Md. App. 173, 322 A. 2d 247 (1974), this Court, speaking through Judge Menchine, said:

"This Court, interpreting *Musgrove*, said in *Wise v. Director*, 1 Md. App. 418, 422, 230 A. 2d 692, 694:

' . . . [T]he effect of a prisoner's refusal to cooperate with the examining staff members is not that he is automatically classified as a defective delinquent, but rather that *the order of court referring a person to Patuxent for an examination as to defective delinquency cannot be defeated by the prisoner's refusal to submit to examination.*' (Italics supplied)."

Judge Menchine pointed out that the holdings that were implicit in *Musgrove* and *Wise* became clearer in subsequent cases. In *McNeil v. Director*, 407 U. S. 245, 92 S. Ct. 2083, 32 L.Ed.2d 719 (1972), the Supreme Court stated, at 251-52:

" ... If the Patuxent staff members were prepared to conclude on the basis of petitioner's silence and their observations over the years, that the petitioner is a defective delinquent, then it is not true that he has prevented them from evaluating him. On that theory, they could have long been ready to make their report to the court, and *the hearing on defective delinquency could have gone forward.*" (Emphasis supplied).

Appellee argues that a "personal examination" by Patuxent Staff is a mandatory condition precedent of any finding of defective delinquency. Article 31B, § 7 (a) in pertinent part states:

"Any such examination shall be made by at least three persons on behalf of the institution for defective delinquents, one of whom shall be a medical physician, one a psychiatrist, and one a psychologist. They shall assemble all pertinent information about the person to be examined, before proceeding therewith, including ... reports as to his social, physical, mental and psychiatric condition and history. On the basis of all the assembled information, plus their own personal examination and study of said person, they shall determine whether in their opinion, or in the opinion of the majority of them, the said person is or is not a defective delinquent. They shall state their findings in a written report addressed to the court ... "

The Court of Appeals in *Musgrove, supra,* seemed to reject the notion that a *"personal examination"* by Patuxent Staff was absolutely necessary. The Court stated that *"usually"* a patient must be personally examined, but that such was not

"*always*" required. Furthermore, as we read *Musgrove*, the Court of Appeals, in using the language,

> "Certainly the statute does not imply, . . . that the staff could have based its conclusion as to the presence or absence of defective delinquency *on the prior record* of the patient . . . . " (Emphasis supplied)

was not speaking of the patient's prior *medical records*, but was addressing itself to the proposition that Patuxent could not base a determination of defective delinquency *solely* upon the prior *criminal record* of the patient.

Recently, in *Director v. Cash*, 269 Md. 331, 305 A. 2d 833 (1973) the Court of Appeals held that a Patuxent inmate who had refused to cooperate in his medical examination and who had been granted *habeas corpus* relief by the Circuit Court for Montgomery County was not entitled to that relief. The Court said, at 348, n. 2:

> "The diagnostic staff report of Clifton Lewis Cash appears in the record as an example of a report furnished for a noncooperative petitioner where there was sufficient historical data available upon which to base a diagnosis of defective delinquency."

Cash was treated at St. Elizabeth's Hospital in Washington, D.C. in 1968 and at Clifton T. Perkins State Hospital on May 18, 1970. At Patuxent, in the words of the Court of Appeals, n. 2,

> "He repeatedly refused to be seen by a psychiatrist. The staff concluded that it should be recommended that the Petitioner Cash be considered for commitment to Patuxent as a defective delinquent, as defined by Art. 31B."

Thus the Court of Appeals in *Cash* impressed the judicial imprimatur on the identical procedure disputed here, *i.e.*, the adjudication of defective delinquency of a noncooperative patient where there is no *personal* medical

examination and the only evidence offered by the State takes the form of prior mental health reports.

In *Sas v. State of Maryland*, 295 F. Supp. 389 (U.S.D.C. Md. 1969) [2] the Court declared at 411:

"The absolute indispensability of a personal examination of one as whom a mental examination is to be made seems incontestable."

The *Sas* court interpreted *State v. Musgrove, supra*, as follows:

"To this Court Musgrove in effect holds that an interview and examination are essential for the required institutional finding and report, and that refusal to submit to examination, resulting in the inability to make such finding and report, may lead to the indeterminate detention of the person referred to Patuxent for examination and report, without any hearing (a hearing having been made impossible by such conduct) on whether or not he is or is not a defective delinquent. 295 F. Supp. 389, 410 (1969)."

The *Musgrove* court states that a personal examination need "not always" be made. In contrast, *Sas, supra*, and the concurring-dissenting opinion in *Tippett, supra*, hold that an "interview and examination" are essential. We note that both *Sas* and *Tippett* were decided prior to the decisions of the Supreme Court in *McNeil v. Director, supra*, the Court of Appeals in *Director v. Cash, supra*, and this Court in *Savage v. State*, 19 Md. App. 1, 308 A. 2d 701 (1973). Moreover, both *Sas* and the concurring-dissenting opinion in *Tippett* were predicated upon the supposition that a recalcitrant patient could be held indefinitely, *sans* hearing, notwithstanding the termination date of his sentence. *McNeil*, however, expressly said that such a procedure constituted a denial of due process. *McNeil*, nevertheless,

2. Sas did not join in the appeal to the United States Court of Appeals for the Fourth Circuit, so that the decision affirming the holding in Sas, *supra*, is styled Tippett v. State of Maryland, 436 F. 2d 1153 (1971).

lighted the way to our decision in *Savage v. State, supra*. We held in *Savage* that when a person who has been lawfully referred to Patuxent for an evaluation as a defective delinquent refuses to submit to examination, the Institution may petition the referring court to cite the patient for contempt.

We think that *Musgrove* and *Cash* make it apparent that a "personal examination" is not always required, and to the extent that *Sas* indicated to the contrary, we decline to adopt it.

The Staff at Patuxent, in the instant case, was ready, willing and able to examine Weeder personally. Their failure to do so is attributable solely to Weeder's noncooperation. Weeder may not thwart the provisions of the Defective Delinquency Act and then argue that they were not properly applied to him.

When a person is referred to Patuxent for an evaluation and he refuses to submit to a personal examination, the Institutional staff must make a decision as to whether it will proceed to submit a Diagnostic Staff Report, grounded upon information available to it, to the referring court or to proceed by way of the contempt procedure described in *Savage v. State, supra*. Patently, it may not do both. *Marsh v. State, supra*. If the Patuxent staff decides that it will pursue the former course of action because it feels that there is sufficient medical data available upon which to make a finding, notwithstanding the lack of a "personal examination", it runs the risk of having its conclusion doubted in the mind of the trier of fact.

Md. Ann. Code Art. 31B, § 5 provides in pertinent part:

" . . . [A] defective delinquent shall be defined as an individual who, by the demonstration of persistent aggravated anti-social or criminal behavior, evidences a propensity toward criminal activity, and who is found to have either such *intellectual deficiency or emotional unbalance, or both,* as to clearly demonstrate an actual danger to society. . . ." (Emphasis supplied).

Although the medical staff of Clifton T. Perkins Hospital reported that Weeder "was essentially without any mental disorder", such a finding does not *per se* eliminate defective delinquency. Section 5 of Art. 31B, is not directed toward "mental disorder", but is rather concerned with "intellectual deficiency or emotional unbalance." Under the circumstances of this case, the report of Patuxent, based as we have previously observed, on "all the available accumulated records and recent past examinations" was, if believed by the trier of fact, of sufficient probative value to support a finding of defective delinquency.

> *Judgment reversed and matter remanded for further proceedings, not inconsistent with this opinion.*