# WEEDER v. STATE OF MARYLAND

[No. 184, September Term, 1974.]

*Decided May 7, 1975.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

Dennis M. Henderson, Assistant Public Defender and Alfred J. O'Ferrall, III, Deputy Public Defender, with whom was Alan H. Murrell, Public Defender, on the brief, for appellant.

Donald R. Stutman, Assistant Attorney General, with whom were Francis B. Burch, Attorney General, and Clarence W. Sharp, Assistant Attorney General, on the brief for appellee.

SINGLEY, J., delivered the opinion of the Court.

When Jefferson Winston Weeder came on for hearing before the Circuit Court for Prince George's County for a determination of the question of his commitment to Patuxent Institution (Patuxent) as a defective delinquent, that court (McCullough, J.) granted Weeder's motion to strike the testimony of psychologist Paul Edwards, the State's only witness; dismissed the defective delinquency proceeding, and remanded Weeder to the custody of the Division of Correction.

The State appealed to the Court of Special Appeals which reversed the trial court and remanded the case for a determination of defective delinquency, State v. Weeder, 22 Md. App. 249, 322 A. 2d 253 (1974). We granted certiorari in order that we might review the action taken by the Court of Special Appeals.

What happened here was that Weeder entered guilty pleas to charges of robbery and of the commission of a perverted sexual act, and in April, 1973, received concurrent eight-year sentences on each of the two counts. He was transferred to Patuxent for evaluation as to defective delinquency in May of 1973, and remained there until his defective delinquency hearing in February of 1974.

At this hearing, Paul Edwards, a psychologist at Patuxent, was qualified as an expert witness, without objection. He testified that his duties included psychological testing, individual psychotherapy, group therapy, and tier counseling. Mr. Edwards produced the Patuxent staff report on Weeder, which we have held to be ordinarily admissible at a defective delinquency hearing, *Schlatter v. Director*, 238 Md. 132, 134, 207 A. 2d 653, 654 (1965). Weeder sought, without success, to exclude the report, for reasons to be considered.

Edwards testified that Weeder had repeatedly refused to submit to psychological testing and to psychiatric examination,[1] and that the diagnostic staff conference, held in September, 1973, based its finding of defective delinquency solely on a psychological and psychiatric evaluation of Weeder made at Clifton T. Perkins State Hospital in January, 1973 during a pretrial mental examination under court order.[2]

The following exchange then took place between Edwards and the State's Attorney:

"Q Have you on any occasion observed Mr. Weeder in the institution?

"A I was present at the staff meeting and I have seen him.

"Q Was Mr. Weeder there?

"A No. He refused to appear.

"Q Other than that, have you had occasion to see Mr. Weeder at any time while in the institution?

"A I have had no occasion to. He is not on my unit. I would have — I would not be brought in contact with him except as examining psychologist."

---

1. The record shows that Weeder was "offered" psychological testing on three occasions; had refused an orientation interview and two psychiatric interviews, and had refused to attend the diagnostic staff conference.

2. Weeder had entered a plea of not guilty by reason of insanity. He was found competent to stand trial.

At the conclusion of Mr. Edwards' testimony, Weeder's counsel's motion to strike the evidence was granted and the case was dismissed.

In the Court of Special Appeals and before us, Weeder relied on the statutory scheme under which Patuxent was created, Maryland Code (1957, 1971 Repl. Vol.) Art. 31B, and particularly on section 7 (a) of that article (1974 Cum. Supp.):

> "(a) *By whom made; report of findings to court; time spent in institution, etc., credited on sentence. — Any such examination shall be made by at least three persons on behalf of the institution 'for defective delinquents, one of whom shall be a medical physician, one a psychiatrist, and one a psychologist.* They shall assemble all pertinent information about the person to be examined, before proceeding therewith, including a complete statement of the crime for which he has been sentenced, the circumstances of such crime, the court in which he was sentenced, the nature of the sentence, copies of any probation or other reports which may have been made about him, and reports as to his social, physical, mental and psychiatric condition and history. *On the basis of all the assembled information, plus their own personal examination and study of the said person, they shall determine whether in their opinion, or in the opinion of a majority of them, the said person is or is not a defective delinquent.* They shall state their findings in a written report addressed to the court, not later than six months from the date said person was received in the Institution for examination, or three months before expiration of his sentence, whichever first occurs.[3] If the substance of the report is that the said person is not a defective

---

3. The provision as to the time within which the report must be filed has been held to be directory rather than mandatory, Director v. Cash, 269 Md. 331, 341-45, 305 A.2d 833, 839-41 (1973), *cert. denied,* 414 U.S. 1136 (1974).

delinquent, he shall be retained in the custody of the Department of Correction under his original sentence as if he had not been examined for possible defective delinquency. Provided, however, that the said person shall be returned to the custody of the Department of Correction with full credit for such time as he has already spent in the institution for defective delinquents or within the custody of the Department of Correction including such allowances (or disallowances) relating to good behavior and/or work performed as the Board of Correction may determine under the provisions of § 688 of Article 27 of the Code." (Emphasis supplied.)

While Weeder conceded, at argument before us, that a recalcitrant inmate cannot be permitted to frustrate the examination mandated by statute by refusing to be interviewed, because such an interview may not always be necessary, he argues that the findings of the medical physician, psychiatrist and psychologist called for by section 7(a) must be bottomed on something more recent and germane than was the case here.

The Court of Special Appeals seems to have discerned a signal in a line of cases beginning with *State v. Musgrove*, 241 Md. 521, 217 A. 2d 247 (1966), followed by *McNeil v. Director*, 407 U. S. 245 (1972), and by *Director v. Cash*, 269 Md. 331, 305 A. 2d 833 (1973), *cert. denied*, 414 U. S. 1136 (1974), that an uncooperative inmate who refuses to be interviewed may no longer frustrate the examination mandated by statute, because the diagnosis could be based on historical data.[4]

We regard the Court of Special Appeals' reading of these

---

4. *Compare* Sas v. State of Maryland, 295 F. Supp. 389 (D. Md. 1969), *affirmed sub nom.*, Tippett v. State of Maryland, 436 F. 2d 1153 (4th Cir. 1971) both decided before McNeil v. Director, 407 U. S. 245 (1972) and Director v. Cash, 269 Md. 331, 305 A. 2d 833 (1973), *cert. denied*, 414 U. S. 1136 (1974). The Supreme Court considered McNeil and Tippett together and dismissed certiorari in the latter case as having been improvidently granted, *sub nom.*, Murel v. Baltimore City Criminal Court, 407 U. S. 355 (1972).

cases as overly broad. What we observed in *Musgrove, supra,* 241 Md. at 530-31, 217 A. 2d at 251-52, was this:

"Inasmuch as a determination of whether or not a person is a defective delinquent depends on diagnosis and prognosis, which turns only partly on the assembled information as to his prior anti-social and criminal behavior, *cf. Simmons v. Director,* 231 Md. 618, 189 A. 2d 644 (1963), we are of the opinion that the legislature in using the term 'personal examination and study' must have intended that the examiner, be he a medical physician, a psychiatrist or psychologist, would use such methods and tests to ascertain the physical, psychiatric and psychological characteristics and deficiencies of the patient as were necessary to enable the examiner to reach a valid opinion. Conceivably, this would not always require the patient to talk to the examiner although it would seem that usually it would, as the record indicates was true in the case before us. Significantly, the requirement is not only that the examination be 'personal' but that it also be the '[examiner's] own.' This, we think, unequivocally implies that the examiners were to apply their expert knowledge in reaching a determination as to the defective delinquency of the patient. . . .

"Certainly the statute does not imply, as the judge below indicated, that the staff could have based its conclusion as to the presence or absence of defective delinquency on the prior record of the patient. The cases indicate the contrary. See *Palmer v. State,* 215 Md. 142, 137 A. 2d 119 (1957); *Cowman v. State,* 220 Md. 207, 151 A. 2d 903 (1959). Nor could the 'personal examination' specifically required by the statute 'take any form' the examiners chose to use in the absence of other statutory or regulatory authority to do so. . . ."

While the Court of Special Appeals, in *Weeder, supra,* 22

632

Md. App. at 253-54, correctly interpreted our language in
*Musgrove*, in concluding that the "prior record" to which
allusion was made above referred to the prior criminal
record of the alleged defective delinquent, the court was
incorrect in its necessarily implied conclusion that a
commitment could be based solely on a patient's prior
medical record. Had the Patuxent diagnostic staff made an
independent evaluation of the findings developed in the prior
examination, we might reach a different result.

In our view, the examination mandated by Art. 31B, § 7
(a) cannot be finessed simply because an inmate declines to
be interviewed. We do not propose here to delineate with any
precision the alternate procedures to be followed by the
medical, psychiatric and psychological team, because we
regard this as far beyond the horizons of judicial expertise.
It occurs to us, however, that at a minimum the report of the
staff should include relevant information from the study
made by the social worker, a summary of the inmate's prior
arrests and convictions,[5] incident reports, disciplinary
infractions, observations made by guards, fellow inmates
and staff, and at least a minimal personal confrontation
between the inmate and staff.

We do not intend to attenuate what we have heretofore
said. In *Musgrove*, *supra*, 241 Md. at 531, we noted that an
examiner might reach a valid opinion in cases where the
inmate would not talk to him. In *Cash*, *supra*, 269 Md. at
347, we took cognizance of the testimony of Dr. Harold M.
Boslow, Director of Patuxent, that while he and his staff
would prefer not to make a diagnosis without a personal
interview, such a diagnosis would be "valid" in the absence
of a showing that there was an intentional and deliberate
design on the part of the staff to delay a diagnosis for an
unreasonable time.

In *McNeil*, *supra*, 407 U. S. 245, no determination of
defective delinquency had been made prior to the expiration
of McNeil's sentence because McNeil had refused to talk to

5. These were before the staff in this case; however, the social worker's
report seems to have been confined to Weeder's home environment.

the psychiatrists. In the course of his opinion for the Court, Mr. Justice Marshall did not preclude the possibility of making an evaluation despite an inmate's refusal to cooperate:

"Finally, respondent suggests that petitioner is probably a defective delinquent, because most noncooperators are. Hence, it is argued, his confinement rests not only on the purposes of observation, and of penalizing contempt, but also on the underlying purposes of the Defective Delinquency Law. But that argument proves too much. *For if the Patuxent staff members were prepared to conclude, on the basis of the petitioner's silence and their observations of him over the years, that petitioner is a defective delinquent, then it is not true that he has prevented them from evaluating him.* On that theory, they have long been ready to make their report to the court, and the hearing on defective delinquency could have gone forward." (Emphasis supplied.) 407 U. S. at 251-52.

It seems to us that the time has come when a clear delineation must be made between an interview and the term "personal examination and study" used in Art. 31B, § 7 (a). The statutorily mandated examination normally contemplates both an interview ·and observation. The recalcitrant inmate, who refuses to talk does not necessarily insulate himself from examination, however. He may still be observed and studied, and, in a proper case, a valid diagnosis reached.

The case before us fell far short of this mark. Mr. Edwards had apparently never attempted to talk to Weeder, nor is there any affirmation that his medical counterpart had done so. Dr. Mourat, the staff psychiatrist, would seem to have had one or two initial interviews which aborted when Weeder said, "I am not a defective delinquent. That's a well known fact." The staff report would appear to be largely bottomed on medical, psychiatric and psychological

conclusions drawn nearly a year previously at another institution, for another purpose, Weeder's criminal record, and the report of a Patuxent social worker, which is not discussed in any informative detail.

We think the trial court was quite right when it granted the motion to strike and that the portents which the Court of Special Appeals perceived in *State v. Musgrove, supra,* 241 Md. 521 and in *Director v. Cash, supra,* 269 Md. 331 were never intended to encompass a case where only pro forma efforts were made to comply with Art. 31B, § 7 (a). We shall therefore reverse the order of the Court of Special Appeals and remand the case to that court for the entry of an order affirming the judgment of the Circuit Court for Prince George's County, without prejudice to the right of the State to reinstitute a properly supported defective delinquency proceeding, assuming that Weeder remains in the custody of the Division of Correction, *see Director v. Daniels,* 243 Md. 16, 47, 221 A. 2d 397, 415-16, *cert. denied,* 385 U. S. 940 (1966).

> *Order reversed; case remanded to the Court of Special Appeals for entry of an order affirming judgment of trial court; costs to be paid by the State.*